**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Floyd Julius PATRIN, Sr., Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Barbara PATRIN, Defendant-Appellant.**

**Nos. 77–2191, 2175.**

United States Court of Appeals, Ninth Circuit.

April 20, 1978.

S. David Swayne (argued), Moscow, Idaho, for defendant-appellant.

James Bevis (argued), Boise, Idaho, for plaintiff-appellee.

Before WALLACE and KENNEDY, Circuit Judges, and GRAY,* District Judge.

WALLACE, Circuit Judge:

Floyd Patrin, Sr. and Barbara Patrin were convicted by a jury of assaulting federal officers in violation of 18 U.S.C. § 111. They contend that the trial court was without jurisdiction to try the case because the victims were not protected by the statutory provision under which they were indicted. We reverse.

I

On August 27, 1976, Mackenzie and O'Malley were measuring and cutting selected trees in the Nez Perce National For-

---

* Honorable William P. Gray, United States District Judge, Central District of California, sitting by designation.

est pursuant to their duties as employees in the United States Forest Service. Under the direction of their supervisor, they were assisting in scientific research on the growth patterns of Douglas Fir trees. While taking data and samples at their test site, they were confronted by Floyd Patrin, Sr., his wife Elsie, and his daughter-in-law, Barbara, all of whom were armed. The Patrins said they had an unpatented mining claim where Mackenzie and O'Malley were working, and they told the two men to leave the area.

The three Patrins were subsequently indicted for assaulting federal officers with a deadly weapon. After the jury had been selected, the Patrins unsuccessfully moved to dismiss the indictment on the ground that Mackenzie and O'Malley were not within the protection of 18 U.S.C. § 111, the statute alleged to have been violated. The contention was raised again in a motion for acquittal following the government's case. The district judge rejected the argument once more, but he did dismiss the indictment insofar as it charged assault with a deadly weapon and allowed the case to proceed on the lesser included offense of simple assault upon a federal officer. At the close of evidence, the Patrins renewed their motion for acquittal, and it was again denied.

The jury returned a verdict of not guilty as to Elsie Patrin. Barbara and Floyd Patrin were found guilty, and they appeal.

## II

The Patrins' main argument on appeal is that the trial court erred in concluding that Mackenzie and O'Malley were included in the class of federal officers and employees described in 18 U.S.C. § 111. Thus, they contend, their conduct did not constitute an offense "against the laws of the United States," 18 U.S.C. § 3231, and the district court lacked subject matter jurisdiction over the case.

18 U.S.C. § 111[1] makes unlawful an assault upon "any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties . . . ." 18 U.S.C. § 1114, in turn, designates several categories of federal officers and employees. Relevant to this case is the following language from section 1114:

any officer or employee of the Department of Agriculture or of the Department of the Interior designated by the Secretary of Agriculture or the Secretary of the Interior to enforce any Act of Congress for the protection, preservation, or restoration of game and other wild birds and animals, *any employee of the Department of Agriculture designated by the Secretary of Agriculture to carry out any law or regulation, or to perform any function in connection with any Federal or State program or any program of Puerto Rico, Guam, the Virgin Islands of the United States, or the District of Columbia, for the control or eradication or prevention of the introduction or dissemination of animal diseases* . . ..

(Emphasis added).

Here are defined two categories of federal employees. The first consists of those designated by the Secretary of Agriculture or the Secretary of the Interior to enforce federal laws for the protection, etc., of game and other wild birds and animals. We shall refer to this as the "game protection category." The second, which we have set off above by italics, includes those designated by the Secretary of Agriculture "to carry out any law or regulation, or to perform any function in connection with any Federal or State program . . . for the control [etc.] . . . of animal diseases

---

1. 18 U.S.C. § 111 provides:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

. . . .." This we shall refer to as the "animal disease category." [2]

In deciding whether the district court had jurisdiction in this case, we are required to make two determinations: (1) Whether, by its indictment and its statements during the prosecution of this case, the government has precluded itself from invoking the court's jurisdiction and proceeding under the game protection category, and (2) if so, whether Mackenzie and O'Malley are within the animal disease category of protected officers and employees.

### III

It appears from the record, and it was confirmed at oral argument on appeal, that throughout the trial of this case the government believed it could validly prosecute the Patrins only under the animal disease category. The indictment identifies Mackenzie and O'Malley merely as "[officers] of the Department of Agriculture designated . . *to carry out any law or regulation* . . .." (Emphasis added). This language is taken directly from that part of section 1114 defining the animal disease category. In the hearing before the district judge on the Patrins' motion to dismiss, the prosecuting attorney, referring to a notice published by the Secretary of Agriculture in the Federal Register in 1940 designating certain federal employees as within the game protection category of section 1114,[3] said:

> The designation of the Federal Register . . . only goes to the wildlife and birds, it appears to me.
> *I consequently feel that the Government cannot rely upon that designation so far as supporting jurisdiction in this case.* Clearly the victims in this matter were not performing any function with regard to wild life and birds [the game protection category], but that does not,

the Government submits, mean that the Indictment should be dismissed.

There are two designations in 1114 and one is relating to the protection and preservation of game and other wild birds and animals [the game protection category] . . ..

The second is the . . . designation that any employee designated by the Secretary of Agriculture to perform and carry out any law and regulation [the animal disease category], the Government submits that that, being taken by itself, gives the Government [sic] the jurisdiction to proceed in this case.

(Emphasis added).

The argument before the district court thereafter centered on whether Mackenzie and O'Malley were covered by the animal disease category. The district judge concluded that they were and denied the motion to dismiss.

As it turns out, the case for jurisdiction under the game protection category may not be foreclosed as the government believed at trial. In *United States v. Tijerina,* 407 F.2d 349 (10th Cir.), *cert. denied,* 396 U.S. 843 & 867, 90 S.Ct. 76, 24 L.Ed.2d 93 (1969), the Tenth Circuit pointed out that the Federal Register designation that the prosecuting attorney in this case conceded was of no help to him, 5 Fed.Reg. 2,940 (1940), may be interpreted as sweeping very broadly. *Id.* at 354. Thus, the game protection category, as given content by 5 Fed. Reg. 2,940 (1940), and as interpreted by the Tenth Circuit in *Tijerina,* could support district court jurisdiction on the facts of this case. The first question before us, therefore, is whether the government, having disavowed any intent to rely upon the game protection category during trial, can now invoke that section for the first time. We hold that it cannot.

> [A]ll officers and employees of the Forest Service assigned to duty in field service are hereby designated to enforce Acts of Congress, and regulations promulgated pursuant thereto, for the protection, preservation, or restoration of game and other wild birds and animals on lands under the jurisdiction of the Forest Service.

---

**2.** The animal disease category was included in section 1114 in 1962. Act of July 2, 1962, Pub.L. No. 87–518, § 10, 76 Stat. 129. All of the language emphasized in the text was inserted at that time.

**3.** This notice, 5 Fed.Reg. 2,940 (1940), provides in part:

As a general rule, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). *Accord, Bustamante v. Cardwell,* 497 F.2d 556, 558–59 (9th Cir. 1974); *Roberson v. United States,* 382 F.2d 714, 718 (9th Cir. 1967); *United States v. Waechter,* 195 F.2d 963, 964 (9th Cir. 1952). It is immaterial whether the issue was not tried in the district court because it was not raised or because it was raised but conceded by the party seeking to revive it on appeal. *Compare United States v. Waechter, supra,* 195 F.2d at 964 *with Wilson v. Byron Jackson Co.,* 93 F.2d 572, 573 n.2 (9th Cir. 1937).

This rule is not without its exceptions, however. For example, where a new theory or issue has first come to light during the pendency of the appeal because of a recent change in the law, the appellate court may, in its discretion, *Singleton v. Wulff, supra,* 428 U.S. at 121, 96 S.Ct. 2868, allow that issue to be raised in the interests of justice. *Hormel v. Helvering,* 312 U.S. 552, 556–60, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). *Accord, Standard Industries, Inc. v. Tigrett Industries, Inc.,* 397 U.S. 586, 587, 90 S.Ct. 1310, 25 L.Ed.2d 590 (1970) (Black, J., dissenting). In such cases, remand for further findings of fact and to give the parties a chance to develop their arguments in light of a new theory or issue may be required. *Hormel v. Helvering, supra,* 312 U.S. at 560, 61 S.Ct. 719. *Cf. Singleton v. Wulff, supra,* 428 U.S. at 120, 96 S.Ct. 2868 (where defendant in trial court had done no more than successfully move to dismiss for lack of standing, and court of appeals reached the merits after reversing the dismissal, defendant was entitled to remand in order to develop his case in district court).

Our circuit has apparently recognized a second, narrow exception to the general rule. When the issue conceded or neglected in the trial court is purely one of law and either does not affect or rely upon the factual record developed by the parties, *cf. Golden Gate Bridge & Highway Dist. v. United States,* 125 F.2d 872, 875 (9th Cir. 1942) (whether a contract is ambiguous will be considered by court of appeals although appellee had conceded the ambiguity below), or the pertinent record has been fully developed, *see United States v. Merrill,* 211 F.2d 297, 302–303 & n.4 (9th Cir. 1954), the court of appeals may consent to consider it.[4] The evident principle underlying this exception is that the party against whom the issue is raised must not be prejudiced by it. Thus, if he might have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue, it should not be permitted to be raised for the first time on appeal.

In this case, it is clear from the record that the trial was conducted on the assumption that the game protection category had no application. The prosecuting attorney disclaimed any reliance upon it, the trial court did not assert jurisdiction in terms of it, and it was not argued in favor of affirmance on appeal until its possible application was pointed out by us during oral argument. We thus have no difficulty concluding that this issue was "not passed upon below." *Singleton v. Wulff, supra,* 428 U.S. at 120, 96 S.Ct. 2868.

It is also clear that neither of the above exceptions to the rule against raising new issues on appeal applies.[5] There has been no recent change in the law during the pendency of this appeal, and we are not convinced that the Patrins would not have conducted their defense differently had the prosecutor argued for the application of the

---

4. The action taken by the Supreme Court in *Turner v. City of Memphis,* 369 U.S. 350, 353, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) (per curiam) appears to have been based upon this rationale. There the Court reached the merits of the case although the trial had proceeded no further than a motion for summary judgment which had not yet been passed upon.

5. *Singleton v. Wulff, supra,* 428 U.S. at 121, 96 S.Ct. 2868, suggests that there may be other circumstances under which an appellate court should consider issues raised for the first time on appeal. But the government has not pointed ed out any such circumstances to us, nor do we perceive any.

game protection category instead of or in addition to the animal disease category of section 1114. At the very least, factual or legal challenges to the application and continuing validity of the 38 year-old designation in 5 Fed.Reg. 2,940 could have been raised and explored.

We therefore conclude that the jurisdiction of the district court cannot rest in this case on the game protection category of section 1114. In so doing, however, we express no opinion as to how we might decide the case were that basis of jurisdiction properly before us for decision.[6] We merely hold that the government's case, in light of its concession during the trial, must stand or fall on whether the animal disease category was properly applied by the district court to the facts of this case.

### IV

■ The government argues that the animal disease category included Mackenzie and O'Malley at the time they were confronted by the Patrins, even though their work for the Department of Agriculture admittedly had nothing to do with "the control or eradication or prevention of the introduction or dissemination of animal diseases."[7] The government would have us read the relevant language of section 1114 as creating two distinct subcategories. The first, to which they assert Mackenzie and O'Malley belonged, consists of federal officers designated by the Secretary of Agriculture "to carry out any law or regulation."[8] The second comprises such officers who "perform any function in connection with any Federal or State program . . . for the control [etc.] . . . of animal diseases." Thus, the government asserts that "for the control . . . of animal diseases" does not modify "any law or regulation," but only "any function in connection with any Federal or State program."

We cannot accept such a strained reading of the statute. To cut the phrase "any law or regulation" loose from its grammatical moorings as proposed would give it an expansive scope that would render superfluous the remaining language of the clause in which it is found.[9] We have examined the legislative history of the 1962 amendment which added this language to section 1114,[10] and we find nothing to support the reading urged upon us by the government. On the contrary, it appears that the legislative intent in amending section 1114 was to "make it clear that Federal officers performing any function authorized by the Secretary of Agriculture *under any Federal or State quarantine program* would be covered by laws prohibiting interference with Federal officers." H.Rep.No. 1516, 87th Cong., 1st Sess., reprinted in [1962] U.S. Code Cong. & Admin. News pp. 1822, 1824 (emphasis added). Were there any uncertainty about the

---

**6.** We thus have no occasion to express approval or disapproval of the decision in *United States v. Tijerina*, 407 F.2d 349 (10th Cir.), *cert. denied,* 396 U.S. 843 & 867, 90 S.Ct. 76, 24 L.Ed.2d 93 (1969).

**7.** The project with which Mackenzie and O'Malley were involved was part of a larger study of the effect on Douglas Fir trees of the Tussock Moth. But the particular work being done by the two men did not involve the Tussock Moth, and the government has not argued that the tenuous connection with the Tussock Moth project made the task done by Mackenzie and O'Malley one to control, eradicate, or prevent animal diseases.

Significantly, the government has not shown us any notice in the Federal Register or elsewhere that, analogous to 5 Fed.Reg. 2,940 (1940) involving the game protection category, designates a broad range of federal employees as within the animal disease category, even

though their specific duties might not touch upon animal diseases.

**8.** Mackenzie and O'Malley are said to fall within this subcategory because, under 16 U.S.C. § 559, "[a]ll *persons employed in the Forest Service of the United States shall have authority to make arrests for the violation of the laws and regulations relating to the national forests . . . ..*"

**9.** If the statute, as the government interprets it, protects these employees when they "carry out any law or regulation," the remaining part of the language contained in the 1962 amendment referring to control of animal diseases would be useless as it would already be covered by the clause relating to the carrying out of a law or regulation.

**10.** Note 2, *supra.*

meaning of the statute, however, it would be resolved against the government under the rule that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971).

The district court accepted the government's reading of the statute when it denied the Patrins' motion to dismiss the indictment and their subsequent motions for acquittal. To do so was error. Since there has been no showing that the Patrins assaulted federal officers described by the statutory provision under which they were indicted and tried, the district court lacked subject matter jurisdiction, and the convictions must be reversed.

Because of our disposition of the jurisdictional issue, we need not reach the Patrins' other contentions on appeal.

REVERSED.