George V. HANSEN and Connie Hansen,
husband and wife,
Plaintiffs-Appellants,

v.

Melvin MORGAN and Nate Morgan
Jewelers of Pocatello, Inc., an Idaho
Corporation, Defendants-Appellees.

No. 76–1636.

United States Court of Appeals,
Ninth Circuit.

Aug. 18, 1978.

As Amended on Denial of Rehearing
Sept. 27, 1978.

John L. Runft (argued), of Runft & Longeteig, Boise, Idaho, for plaintiffs-appellants.

William D. Olson (argued), of Racine, Huntley & Olson, Pocatello, Idaho, for defendants-appellees.

Before CARTER and TANG, Circuit Judges, and KUNZIG,* Judge of the United States Court of Claims.

JAMES M. CARTER, Circuit Judge:

This is an appeal from the district court's grant of summary judgment dismissing appellants' suit for invasion of privacy brought under the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.* Appellees Melvin Morgan and Nate Morgan Jewelers of Pocatello, Inc. (hereafter sometimes referred to as "the Morgans") obtained a consumer credit report on appellants George and Connie Hansen for a purpose allegedly not permitted by the FCRA. The Hansens filed suit contending the act imposes a requirement on users of consumer credit reports to comply with provisions of the FCRA restricting the purposes for which consumer reports can be furnished and that the act provides a civil remedy for

---

* Honorable Robert L. Kunzig, Judge of the United States Court of Claims, sitting by designation.

failure of the user to comply. The district court ruled that the requirements relied upon by the Hansens apply only to consumer reporting agencies and that none of the requirements imposed on users of credit reports had been violated by the Morgans.

The major question for review is whether the criminal provision of the FCRA—15 U.S.C. § 1681q—provides a standard for imposition of civil liability under the FCRA. The Morgans contend this issue was never raised below, foreclosing this court from considering it on appeal. In addition, they maintain that even if noncompliance with the act's criminal requirements forms a basis of civil liability, the document at issue on this appeal is not a "consumer report" and thus their conduct is not governed by the FCRA. We conclude (1) that the Hansens' contentions are appropriate for decision on appeal; (2) that the FCRA governs the Morgans' conduct in this case; and (3) that the FCRA authorizes a civil remedy against a user of a credit report who fails to comply with the act's criminal provision— 15 U.S.C. § 1681q. We reverse.

## I. *Facts.*

This case grew out of a strenuous campaign for the 1974 Republican candidacy for the United States Congress in the Second District of Idaho. Orval Hansen, the incumbent congressman, was defeated in the Republican primary election by appellant George Hansen. Thereafter two Idaho citizens filed complaints with the clerk of the United States House of Representatives alleging improper campaign financing procedures by George Hansen. This caused an investigation of George Hansen by the House Administration Committee, of which incumbent Orval Hansen was a member until his term as Congressman expired.[1]

Judith Austin, who had filed one of the above complaints, was a friend of Orval Hansen. She had a conversation with Orval Hansen in which it was discussed that a credit report on George Hansen could be interesting for what it might disclose about his campaign financing. Therefore Austin later telephoned one Rose Bowman. The substance of Austin's conversation with Bowman is in part disputed, but it is agreed that a credit report on George Hansen was discussed and that Melvin Morgan was considered as someone who might be able to obtain such a report.

Appellee Melvin Morgan is the principal stockholder and chief executive of appellee Nate Morgan Jewelers of Pocatello, a corporation. The corporation is a member of the Pocatello Credit Bureau, entitled to receive credit reports from the Bureau. On about August 10, 1974, Melvin Morgan received a telephone call from Rose Bowman which he construed to be a request for a credit report on George Hansen. Morgan contends he agreed to obtain the report upon the belief that it was desired by Orval Hansen to assist the House Administration Committee's investigation of George Hansen.[2] Upon Melvin Morgan's request the credit report was provided without question by the Pocatello Credit Bureau.[3] The re-

1. George Hansen ultimately won his bid for the congressional seat in the general election in the fall of 1974. Subsequently he pled guilty to a two count information charging violations of the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 434 & 441.

2. The Hansens allege a different purpose motivated Melvin Morgan to obtain the credit report. According to them even though George Hansen had defeated Orval Hansen in the Republican primary election, if George Hansen could have been forced to resign or abandon his nomination as the Republican candidate for the congressional seat, Orval Hansen would have been automatically designated as the succeeding nominee pursuant to 34–715(4) of the Idaho Code. Thus, Morgan's conduct is assert-

edly a "conscious political act of a volunteer, and not that of a person proceeding upon the belief that he was acting pursuant to a legal request of a governmental entity."

3. The Pocatello Credit Bureau did not inquire of Morgan about the reasons for which he desired the report. Morgan simply identified himself by name and number and made the request. He said, "127, Mel Morgan, I would like a written report update on George V. Hansen." The chief executive of the credit bureau stated in his deposition that the bureau does not inquire of the purpose for which each request they receive is made. Rather, the bureau relies on the member's compliance with the provisions of the membership and service con-

port was issued in the names of both George V. Hansen and his wife, Connie. It contained no information adverse to either of them.

When he received the report, Morgan delivered it personally to Orval Hansen's office in Washington D. C. Eventually the report reached the House Administration Committee.

Upon learning of the existence of the credit report, George and Connie Hansen filed suit against the Morgans and various other parties involved in the obtaining of the report. After extensive discovery, the Hansens dropped their complaint against all parties except the Morgans. Their amended complaint alleged that the Morgans, by willfully or negligently failing to comply with the requirements of § 1681b and § 1681e(a) "and other related Sections" of the FCRA, unlawfully violated the Hansens' right to privacy. Damages were sought under §§ 1681n and 1681o which authorize civil causes of action for noncompliance with the requirements of the act.

The Morgans moved for summary judgment contending as a matter of law that their conduct violated no provision of the FCRA, leaving no basis from which a civil suit based on the FCRA could be launched. In an opinion which reviewed the requirements imposed by each of the noncriminal provisions of the FCRA, the district judge agreed with the Morgans and granted their motion for summary judgment. The Hansens appeal.

## II. *Justiciability.*

■ Initially the Morgans contend that this court should be foreclosed from considering § 1681q as a basis of civil liability for their conduct because the Hansens did not rely on it below and cannot raise it for the first time on appeal. However, this contention too narrowly construes the record. In their amended complaint the Hansens alleged that the Morgans invaded their privacy by "willfully or negligently failing

tract, which requires users to seek information only for purposes permitted by the FCRA. These purposes are enumerated both in the

to comply with the requirements of Sections 1681b, 1681e(a), and other related Sections of 15 U.S.C. 1681 . . . ." In their opposition to summary judgment the Hansens argued that under §§ 1681n and 1681o the Morgans were liable for failure to comply with § 1681b. As explained in section IV, *infra,* § 1681b states requirements that often will form the measuring stick of when § 1681q has been violated. The essence of the Hansens' argument was directed at the same concerns reached by § 1681q. If nothing else, the Hansens' general reliance on "other related Sections of 15 U.S.C. 1681" when coupled with their argument of the factors relevant to application of § 1681q sufficiently posed the issue of the applicability of § 1681q below to allow this court to reach it on appeal.

■ Moreover, even if we concluded the issue of the relationship between § 1681q to civil liability under the FCRA was not properly raised below, we still would not be precluded from reaching it. Generally a federal appellate court will not consider an issue not passed upon below. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *United States v. Patrin,* 575 F.2d 708, 712–713 (9 Cir. 1978). However, as we held in *United States v. Patrin, supra,* this rule is not without its exceptions. One of the exceptions recognized in *Patrin* is that when "the issue conceded or neglected in the trial court is purely one of law and either does not affect or rely upon the factual record developed by the parties, [citations omitted], the court of appeals may consent to consider it." *United States v. Patrin, supra,* at 712.

■ Here the parties fully developed the facts below. The factual issue critical to our holding—whether the Morgans had obtained the credit report for reasons not permitted by the FCRA—was hotly disputed and the subject of extensive discovery. The sole aspect of that issue not treated below was the relationship of the criminal

FCRA and in the bureau's membership contract.

provision, 15 U.S.C. § 1681q, to the provisions creating civil liability for noncompliance with the act, 15 U.S.C. §§ 1681n & 1681o. This is purely a legal issue, the injection of which would not have caused the Morgans to develop new or different facts or to advance an alternative legal theory in their defense. Accordingly, if the issue had not been raised adequately below, we would exercise our discretion to consider it upon appeal.

### III. *Applicability of the FCRA.*

 Before the trial judge the Morgans contended the credit report obtained on the Hansens was not a "consumer report" within the meaning of the FCRA. Implicitly, at least, the trial judge rejected this contention by reaching the merits of the Hansens' claim. Nevertheless, on appeal the Morgans repeat their contention as an alternative ground for affirming the trial court's ultimate holding. This effort is unavailing because the trial judge was correct in treating the credit report as a "consumer report" as defined in the FCRA.

Section 1681a(d) of Title 15 defines "consumer report" to be:

". . . *any written, oral, or other communication of any information by a consumer reporting agency* bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living *which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for* (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. * * "
(Emphasis added.)

The credit report issued on the Hansens in this case falls directly within this definition. Since the Pocatello Credit Bureau knew nothing of the Morgans' real reason for requesting the report, it must have supplied this information with the expectation that the Morgans would use it for purposes

consistent both with the FCRA and with the Bureau's form membership contract which closely correlated with the restrictions in the act. And unless the Bureau was generally collecting such information for purposes not permitted by the FCRA, it must have collected the information in the report for use consistent with the purposes stated in the act. There has been no suggestion otherwise. Accordingly, the credit report is (1) a written communication of information (2) by a consumer reporting agency (3) bearing on the Hansens' credit worthiness, credit standing or credit capacity (4) which was both expected to be used, and collected in whole or in part, for the purpose of establishing the Hansens' consumer eligibility for credit transactions. As such it is a consumer report under the FCRA.

### IV. *Civil Liability under the FCRA.*

Section 1681h(e) of Title 15 limits civil liability under the FCRA as follows:

"(e) *Except as provided in sections 1681n and 1681o of this title,* no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, *any user of information,* or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *except as to false information furnished with malice or willful intent to injure such consumer.*"
(Emphasis added.)

The information upon which the Hansens based their suit seems to have been disclosed pursuant to sections 1681g and 1681h, but the Hansens make no contention that any information in the credit report obtained about them was false. The district judge specifically found there was no false information contained in the report. Thus any liability of the Morgans to the Hansens must be predicated on either § 1681n or § 1681o.

These sections create civil liability for willful (§ 1681n) or negligent (§ 1681*o*) noncompliance by a consumer reporting agency or user of information who fails to comply with "any requirement imposed under this subchapter with respect to any consumer . . . ."[4] If the Morgans have negligently or willfully failed to comply with any "requirement" imposed by the FCRA on users of credit information, they can be held liable by the Hansens.

The crucial issue is what constitutes "any requirement imposed under this subchapter" for purposes of § 1681n and § 1681*o*. The district court apparently concluded only the noncriminal provisions of the FCRA state "requirements" for purposes of civil liability under the act. The opinion below reviewed each of the noncriminal provisions of the act which regulate conduct, concluding that no provision which applies to users of credit information, as opposed to consumer reporting agencies, had been violated by the Morgans. No mention was made of the criminal provision—§ 1681q. *See Hansen v. Morgan*, 405 F.Supp. 1318 (D.Idaho 1976).

■ However, we conclude § 1681q does state a "requirement imposed under this subchapter". 15 U.S.C. § 1681q provides:

"Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than \$5,000 or imprisoned not more than one year, or both."

This section requires that users of consumer information refrain from obtaining such information from credit reporting agencies under false pretenses. Its violation therefore, forms a basis of civil liability under either § 1681n or § 1681*o*.

■ The standard for determining when a consumer report has been obtained under false pretenses will usually be defined in relation to the permissible purposes of consumer reports which are enumerated in 15 U.S.C. § 1681b.[5] This is because a consumer reporting agency can legally issue a report only for the purposes listed in § 1681b. If the agency is complying with the statute, then a user cannot utilize an account with a consumer reporting agency to obtain consumer information for a purpose not permitted by § 1681b without using a false pretense.

We hold that obtaining a consumer report in violation of the terms of the statute without disclosing the immpermissible purpose for which the report is desired can

4. These provisions read, respectively:
 *§ 1681n* Civil liability for willful noncompliance
 "Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
 (1) any actual damages sustained by the consumer as a result of the failure;
 (2) such amount of punitive damages as the court may allow; and
 (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."
 *§ 1681o* Civil liability for negligent noncompliance
 "Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under

this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
 (1) any actual damages sustained by the consumer as a result of the failure;
 (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court."

5. This provision reads:
 *§ 1681b* Permissible purposes of consumer reports
 "A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
 (1) In response to the order of a court having jurisdiction to issue such an order.
 (2) In accordance with the written instructions of the consumer to whom it relates.
 (3) To a person which it has reason to believe—
 (A) intends to use the information in connection with a credit transaction involving

constitute obtaining consumer information under false pretenses, and that the facts in this case demonstrate that the consumer report was so obtained.[6]

This construction of the FCRA is not only consistent with the intent of Congress as revealed by the explicit language of § 1681n, the legislative history, and the stated purpose of the Act, but also comports with Supreme Court precedent relating to civil liability based on criminal provisions of federal statutes in general. When introducing the Fair Credit Reporting Bill in the Senate, Senator Proxmire stated that the bill would require:

". . . that credit bureaus have in effect procedures for guaranteeing the confidentiality of the information they collect and that no such information be released to noncreditors such as governmental investigative agencies without the express consent of the person involved." 114 Cong.Rec. 24902 (1968). *See Belshaw v. Credit Bureau of Prescott*, 392 F.Supp. 1356, 1360, n. 4 (D.Ariz.1975).

As explained, § 1681q extends to users of information the requirement that they refrain from obtaining consumer information for such impermissible purposes.

The declared purpose of the FCRA is to assure that "consumer credit, personnel, insurance and other information" is collected, disseminated and used in a manner which will protect the interest of the consumer in "confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." 15 U.S.C. § 1681(b). The principle mechanism for accomplishing this goal is the regulation of reporting of consumer information by consumer reporting agencies. But requirements were also placed on

users of credit information. This was necessary because the objectives of the act could be defeated if users could obtain information from consumer reporting agencies under false pretenses with impunity. Even consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes. Section 1681q is a response to this concern.

Finally, the Supreme Court, when faced with claims for civil damages based on implication from penal provisions of various federal statutes, has recognized that the intention of Congress often cannot be effectively implemented without both civil and criminal remedies. The Court has stated:

"In those cases [*Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916); *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)] we concluded that criminal liability was inadequate to ensure the full effectiveness of the statute which Congress had intended. Because the interest of the plaintiffs in those cases fell within the class that the statute was intended to protect, and because the harm that had occurred was of the type that the statute was intended to forestall, we held that civil actions were proper. That conclusion was in accordance with a general rule of the law of torts. See Restatement (Second) of Torts § 286." *Wyandotte Co. v. United States*, 389 U.S. 191, 202, 88 S.Ct. 379, 386, 19 L.Ed.2d 407 (1967).

Here the case is even stronger for there is no need to imply a civil remedy. § 1681n explicitly authorizes one.

---

the consumer . . . and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer."

**6.** The Morgans assert that their purpose in obtaining credit report on George Hansen was to assist the House Administration Committee evaluate Hansen's fitness for employment as a public official. They argue this is a permissible "employment purpose" under 15 U.S.C. § 1681b(3)(B). We refuse to extend the definition of "employment purpose" to encompass the Morgans' conduct in this case.

■ The Morgans reply that § 1681q was not intended to protect the consumer, but rather the consumer reporting agency which is required by the statute to institute reasonable reporting procedures to protect the privacy of consumers. Thus they contend a consumer has no standing to sue under it. However, the FCRA was designed in whole and in virtually each part to protect not consumer reporting agencies, but consumers themselves. If § 1681q helps consumer reporting agencies comply with the act, that result is secondary to the ultimate protection which compliance by users as well as consumer reporting agencies gives to the consumer.

We hold that § 1681q states an explicit "requirement imposed under this subchapter [the FCRA]". Noncompliance with § 1681q thereby forms a basis of civil liability under § 1681n. The Hansens' claim states a valid cause of action under these sections and there were sufficient issues of fact to withstand summary judgment.

### V. Conclusion.

The judgment of the district court is reversed and remanded for a trial.