FILED

JAN 31 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>LAURA KAY JAMES and JAKE GUILLERMO JAMES,<br><br>               Debtors. | BAP No. CC-18-1021-TaFKu<br><br>Bk. No. 1:16-bk-11150-VK<br><br>Adv. No. 1:16-ap-01097-VK |
| Laura Kay James ; JAKE GUILLERMO JAMES,<br><br>               Appellants,<br><br>v.<br><br>VIKTORIA KIRAKOSIAN,<br><br>               Appellee. | MEMORANDUM* |

Submitted Without Oral Argument on January 24, 2019.

Filed – January 31, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

   * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

———————

Appearances:     Appellants Laura Kay James and Jake Guillermo James, pro se, on brief.

———————

Before: TAYLOR, FARIS, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Laura Kay James and Jake Guillermo James appeal from a judgment rendering a $16,509.53 debt nondischargeable under § 523(a)(2)(A) and § 523(a)(6). The bankruptcy court entered that judgment after a trial—a trial at which Debtors elected to not testify, not call witnesses in their favor, and not introduce evidence. Creditor Viktoria Kirakosian, to the contrary, testified on her own behalf and provided documentary evidence. The bankruptcy court found Ms. Kirakosian credible and believed her version of the facts.

On appeal, Debtors primarily disagree with the bankruptcy court's factual findings. But these findings are not clearly erroneous. As a result, we AFFIRM.

———————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

2

# FACTS[2]

Ms. Kirakosian owns a multi-unit rental property. In December 2014, Debtors applied for rental of a newly-renovated unit. Ms. James completed a rental application and in doing so represented generally that Debtors paid their rent timely; more specifically, she represented that Debtors had never been defendants in an unlawful detainer action. Ms. Kirakosian discussed the application with Debtors, and they both verbally confirmed the representations in the application.

Later, Ms. Kirakosian and Debtors walked through the unit; Debtors did not raise any issues regarding its condition.

Debtors signed a lease agreement for a one-year term and provided a security deposit and prorated rent for December. They then moved in and paid rent for the next three months without complaint.

But thereafter, the situation changed; Debtors' next two rent payments were returned for non-sufficient funds. Ms. Kirakosian contacted Debtors each time. And each time Debtors said their payment issues stemmed from problems with the Internal Revenue Service.

As the rental defaults continued, Debtors took another approach. In

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood),* 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003). For instance, Debtors did not provide us with a copy of the bankruptcy court's findings of fact and conclusions of law. *See* AP Dkt. No. 41 ("Mem. Dec.").

response to demands for payment, Mr. James told Ms. Kirakosian that Debtors would withhold rent until she repaired alleged damage to the unit. Debtors never paid rent again.

Instead, Debtors filed a complaint with the Los Angeles housing department. Upon receiving it, Ms. Kirakosian tried to access the unit. But Debtors had changed the locks, in contravention of the lease agreement. They twice denied Ms. Kirakosian access to the unit.

Eventually, Ms. Kirakosian filed a bounced check report with the Los Angeles police department. She also visited a local courthouse and discovered that Debtors were defendants in two unlawful detainer actions, one filed a year before they filled out the rental application and another filed only two months before they filled out the rental application.

Debtors did not abandon the unit until January 2016, more than nine months after they stopped paying rent. They left the unit dirty and damaged; Debtors left garbage, items of furniture, and paintings behind and the toilet, garbage disposal, laminate flooring, heating unit, smoke detectors, bathtub, and a doorknob were damaged.

After they changed the locks, Debtors were the only individuals with access to the unit during their tenancy. Ms. Kirakosian commenced two small claims actions against Debtors seeking back rent and recovery for the damages. Debtors then filed a Chapter 7 petition. Ms. Kirakosian responded with a complaint requesting nondischargeability of Debtors'

4

debt to her under § 523(a)(2)(A), (a)(2)(B), and (a)(6).

The bankruptcy court held a trial in the adversary proceeding, and Ms. Kirakosian testified on her own behalf. After she completed her case, the following exchange occurred:

| | |
|---|---|
| THE COURT: | Okay. So I guess what we'll do then, is after lunch we'll put on your case, if you're -- |
| MR. JAMES: | We can save some time, Your Honor. |
| THE COURT: | What? |
| MR. JAMES: | We're not going to -- I'm not going to call any witnesses. We're not making -- |
| THE COURT: | You're not -- |
| MR. JAMES: | -- a case. |
| THE COURT: | You're not doing -- |
| MR. JAMES: | No. |
| THE COURT: | -- do it? |
| MR. JAMES: | No, ma'am. |
| THE COURT: | Okay. So then we're done -- |
| MR. OLSEN: | Okay. |
| THE COURT: | -- right -- |
| MR. OLSEN: | Yeah. |
| THE COURT: | -- except for closing -- |
| MR. OLSEN: | Correct. |

Hr'g Tr. (Nov. 1, 2017) 104:8–25.

The bankruptcy court later awarded Ms. Kirakosian a nondischargeable judgment of $16,509.53 for unpaid rent and damage to the unit under § 523(a)(2)(A) and a separate nondischargeable judgment of $2,559.53 under § 523(a)(6) based only on damage to the unit. Debtors timely appealed.

5

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in entering judgment under § 523(a)(2)(A) and § 523(a)(6)?

## STANDARD OF REVIEW

Whether a claim is excepted from discharge under § 523(a) presents mixed issues of law and fact. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). Mixed questions of law and fact are usually reviewed de novo. *Id.* But in the context of a dischargeability analysis, the bankruptcy court's factual findings are reviewed under the clearly erroneous standard. *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996); *see In re Su*, 290 F.3d at 1142.

As a result, whether a creditor proved an essential element of § 523(a)(2)(A) is a factual determination reviewed for clear error. *In re Candland*, 90 F.3d at 1469; *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1283 (9th Cir. 1996) ("A finding of whether a requisite element of section a [sic] 523(a)(2)(A) claim is present is a factual determination reviewed for clear error."); *see also Eugene Parks Law Corp. Defined Benefit Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1456 (9th Cir. 1992) ("The determination of justifiable reliance [under § 523(a)(2)(A)] is a question of

fact subject to the clearly erroneous standard of review.").

"Clearly erroneous review is significantly deferential, requiring that the appellate court accept the [trial] court's findings absent a definite and firm conviction that a mistake has been made." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (internal quotation marks omitted). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. *United States v. Elliott*, 322 F.3d 710, 714 (9th Cir. 2003). A factual finding is clearly erroneous, however, if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Put differently, a factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Because they are pro se, we liberally construe Debtors' appellate briefs. *See Cruz v. Stein Strauss Trust # 1361 (In re Cruz)*, 516 B.R. 594, 604 (9th Cir. BAP 2014). Their appellate arguments broadly fall into three categories: first, the bankruptcy court's handling of the trial and its general factual findings; second, the bankruptcy court's § 523(a)(2)(A) determination; and third, the bankruptcy court's § 523(a)(6) determination.

## A. The bankruptcy court properly conducted the trial and its factual findings are not clearly erroneous.

The bankruptcy court's findings of fact followed a trial where there was only one testifying witness, Ms. Kirakosian. And only Ms. Kirakosian moved exhibits into evidence. The bankruptcy court found her testimony credible.

Debtors, on the other hand, neither called any witnesses nor testified themselves nor introduced any exhibits into evidence. They first argue on appeal that they were not allowed to present exhibits and were instead limited to "oral denials and objections to the Appellees exhibits and testimony . . . ." Opening Br. at 10. But they fail to substantiate this by reference to the record. And, after a thorough review of the excerpts of record they submitted to us[3] and the trial transcripts, we find no instance where the bankruptcy court prohibited Debtors from introducing evidence.

Instead, as the exchange quoted above made clear, Debtors made a calculated decision to present no evidence. As such, we deem Debtors' argument that the court erred by not letting them introduce evidence both lacking in merit and waived.

Next, Debtors attack Ms. Kirakosian's documentary evidence and

---

[3] We note that most of the documentary evidence that Debtors submitted as their excerpts of records were not presented to the bankruptcy court at trial. As a result, we do not consider any of it. *Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("Evidence that was not before the lower court will not generally be considered on appeal.").

argue that the bankruptcy court erred in considering what they characterize as unauthenticated and hearsay evidence concerning their status as defendants in unlawful detainer actions. This argument also fails.

Debtors never provided a copy of the relevant documentary exhibits on appeal, but, based on trial testimony, we identify the relevant exhibit as Exhibit I, a collection of documents including printouts from the state court's records showing two unlawful detainer actions filed against Debtors. This evidence was adequately authenticated; Ms. Kirakosian testified that she went to a local courthouse, searched its records, and then printed out these documents. This was sufficient under the Federal Rules of Evidence as public records may be authenticated based on evidence that "a document was recorded or filed in a public office as authorized by law . . . ." Fed. R. Evid. 901(b)(7). And this evidence, as relevant on appeal, was not hearsay. The bankruptcy court found that Debtors fraudulently represented that they were never defendants in an unlawful detainer action; the printouts were not inadmissible hearsay because the truth of the matters asserted therein was not necessarily considered. They were admissible to show that Debtors were named as defendants in two unlawful detainer actions filed shortly before they rented the unit. Indeed, because the printouts were public records, the bankruptcy court was entitled to take judicial notice of the undisputed fact that Debtors were unlawful detainer action defendants. *See Lee v. City of L.A.*, 250 F.3d 668, 690

(9th Cir. 2001).

And, in any event, at trial Debtors never objected to Exhibit I on hearsay or authentication grounds. As a result, they waived any issue regarding the admissibility of these documents and related testimony by failing to obtain a ruling from the trial court on their objections. *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir. 1996), *as amended on denial of reh'g* (June 26, 1996) ("By failing to object to evidence at trial and request a ruling on such an objection, a party waives the right to raise admissibility issues on appeal.").[4]

Finally, Debtors argue that Ms. Kirakosian never testified that she saw Debtors damage the property, merely relied on other peoples' reports, and provided no evidence that the damage was not pre-existing or that it actually occurred. Their position is not persuasive—they appear to assume that the bankruptcy court erred unless Ms. Kirakosian provided eye-witness testimony regarding their acts of vandalism. Their assumption is false. The bankruptcy court's finding that Debtors damaged the unit was adequately supported by inferences reasonably drawn from the record:

> Plaintiff demonstrated that only Defendants had access to the
> Property, especially in light of the fact that Defendants changed

---

[4] Assuming there was an erroneous evidentiary ruling, we would only reverse if the error was prejudicial. *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). Debtors never argue that the error was prejudicial. And, as noted, Ms. Kirakosian testified about how she discovered the previous unlawful detainer actions. Debtors never objected to this testimony. The bankruptcy court found her credible.

10

the locks at the time they had possession of the Property. Plaintiff also established that Defendants were intentionally damag[ing] the Property to stall eviction or to punish Plaintiff for attempting to evict Defendants. For example, despite Defendants' assertion that the Property did not have screen doors, Plaintiff found screen doors hidden in the closet on the Property after Defendants abandoned the Property. Moreover, the damage done to the garbage disposal unit, the toilet and the laminate floors could have only been done intentionally. The fact that Plaintiff found coins in the garbage disposal, a large quantity of paper towels stuffed into the toilet and man-made carvings into the laminate flooring indicates that Defendants purposefully damaged the Property rather than accidentally causing such damage.

Mem. Dec. at 14. The bankruptcy court also explicitly addressed

Defendants' position:

Defendants' sole defense to this claim is that Plaintiff did not personally witness Defendants damaging the Property, and cannot prove that it was Defendants who caused the damage. However, Plaintiff testified that only Defendants had access to the Property. In fact, Defendants changed the locks after moving in so that not even Plaintiff or her property managers could access the Property.

*Id.* at 15.

The bankruptcy court, thus, did not clearly err in finding that

Defendants damaged the Property.

**B.** **The bankruptcy court did not err in entering judgment under § 523(a)(2)(A).**

Section 523(a)(2)(A) excepts from discharge a debt resulting from

11

"false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. § 523(a)(2)(A). The creditor bears the burden of proving § 523(a)(2)(A)'s applicability by a preponderance of the evidence. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010). In the Ninth Circuit, the five elements for a § 523(a)(2)(A) nondischargeability claim are:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of [the debtor's] statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir. 2000).

Debtors discuss only some of the elements on appeal.

**Misrepresentations/proximate cause.** The bankruptcy court found that Debtors "made several misrepresentations to [Ms. Kirakosian] prior to [Ms. Kirakosian] renting the Property to Defendants." Mem. Dec. at 12. Many of those misrepresentations concern information Debtors put on the rental application.

To start, as noted above, the bankruptcy court found that Debtors represented orally and in writing that they had never been defendants in an unlawful detainer action. This finding has support in the record, as does

12

the bankruptcy court's corollary finding, based on admissible documentary evidence, that the statement was false.[5]

On appeal, Debtors first argue that the relevant question in determining whether a tenant committed fraud in connection with renting a property is whether, during the negotiations, the tenant induced the owner by making materially false representations, such as that they had never been late making rent payments or that their income was sufficient—neither of these, they contend, occurred in the present case. But the bankruptcy court found that Debtors represented that they were never unlawful detainer defendants (and subsequently evicted), that this representation was false, and that Debtors knew it was false. Debtors do not show that these findings were clearly erroneous. And we see no error in the bankruptcy court's implicit determination that this was not an immaterial misstatement as it goes to the heart of the landlord–tenant relationship. Even under Debtors' proposed "materiality" standard, this untruth satisfies the misrepresentation element of a § 523(a)(2)(A) claim.

Next and so far as we can tell, Debtors argue that their

---

[5] We acknowledge that the bankruptcy court identified other false statements. We also acknowledge that in some cases the determination of falsity may rely in some part on hearsay evidence. But this is of no moment as Debtors failed to object at trial and waived any objection. Thus, solely in the interest of streamlining the analysis, we focus only on the glaring misrepresentation regarding their defendant status in an unlawful detainer action and the resulting eviction where, as we explained, a hearsay objection would never be successful.

representations on the rental application, which is not a binding contract, cannot support a fraud cause of action resulting from their actual rental of the unit, which was governed by a separate contract. It is unclear just which element Debtors dispute, but we assume it is proximate cause. In any event, we disagree for two reasons.

First, they have not shown that they raised this point with the bankruptcy court. As a result, we need not consider it. *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) ("The usual rule is that arguments raised for the first time on appeal or omitted from the opening brief are deemed forfeited."); *Mano-Y&M, Ltd. v. Field (In re Mortg. Store, Inc.)*, 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue by failing to raise it in a bankruptcy court."); *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978) ("As a general rule, a federal appellate court does not consider an issue not passed upon below." (internal quotation marks omitted)).

Second, the bankruptcy court found that the representations Debtors made in the rental application were a proximate cause of the damage: "[T]he damages incurred by Plaintiff were proximately caused by Plaintiff's reliance on Defendants' statements. Plaintiff testified that she would not have rented the Property to Defendants had she known about the prior evictions." Mem. Dec. at 13. These evictions were the result of the unlawful detainer actions. Debtors do not show that this finding was clearly erroneous. As a result, it is immaterial whether the rental

14

application was a binding contract because Debtors' misrepresentations in it caused Ms. Kirakosian to rent the unit to them.

**Intent to deceive.** The bankruptcy court found that Debtors intended to deceive Ms. Kirakosian:

> Defendants also had an intent to deceive Plaintiff. Based on Defendants' rental history, it appears Defendants had a habit of entering into lease agreements knowing they would be unable to pay rent and then staying on the premises rent-free while landlords filed and prosecuted unlawful detainer actions. Defendants intentionally made false statements in the Application and verbally to Plaintiff to induce Plaintiff to rent the Property to Defendants.

*Id.*

On appeal, Debtors argue that they did not intend to deceive Ms. Kirakosian because they paid a security deposit and just over three months rent before they stopped paying. But this overlooks that the lease agreement called for twelve months of rental payments. Taken to its logical conclusion, Debtors argue that any party who partially performs on a contract cannot be liable for fraud in the inducement. But § 523(a)(2)(A) and fraud are not so narrow. And the acknowledged and undisputed fact that Debtors made some rental payments is insufficient to overcome the bankruptcy court's finding that Debtors, even in spite of those payments, intended to deceive Ms. Kirakosian from the initiation of the landlord-tenant relationship. It found, based on inferences it drew from facts in the

15

record, that Debtors had a habit of this type of fraud. As a result, the bankruptcy court's intent finding is not clearly erroneous.

**Justifiable reliance.** The bankruptcy court found that Ms. Kirakosian justifiably relied on Debtors' representations and did not need to investigate. Debtors contend that she was an experienced landlord and that they provided her with their credit report, previous rental history, and personal references. This, they urge, should have been enough: "It doesn't seem reasonable that a landlord - especially one who has rented property to previous tenants - wouldn't make such a phone call, thus a failure to do so negates the 'reasonable reliance' clause of Section 523(a)(2)(A)." Opening Br. at 7. In short, they contend that Ms. Kirakosian was negligent or unreasonable in not taking steps to verify the information that they provided on the rental application.

But that is not the right legal standard. "[A] creditor's reliance on a debtor's misrepresentation need be only justifiable, not reasonable," for § 523(a)(2)(A) purposes. *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1090 (9th Cir. 1996). As a result, even if Debtors are correct that Ms. Kirakosian's reliance was unreasonable, they have not shown that the bankruptcy court erred when it found that Ms. Kirakosian, who it also found was not under a duty to investigate, *justifiably* relied on their representations. And, in addition, having failed to provide any evidence at trial, they failed to establish that investigation would have established the

falsity of their statements.

**C.      The bankruptcy court did not err in entering judgment against Debtors under § 523(a)(6).**

Section 523(a)(6) excepts from discharge debts arising from a debtor's "willful and malicious" injury to another person or to the property of another. *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008). "Willful" and "malicious" are conjunctive requirements subject to separate analysis. *Id.*; *In re Su*, 290 F.3d at 1146–47.

In its memorandum decision, the bankruptcy court recited the correct § 523(a)(6) legal standard. And it made the requisite findings, which have support in the record, as to Debtors' state of mind. Although the bankruptcy court did not explicitly identify the underlying California tort that would support § 523(a)(6) liability, we need not look far to be convinced that their conduct was sufficiently tortious: among other things, Debtors put coins in a garbage disposal, stuffed paper towels into toilets, and made carvings in the floor. This is intentional injury to property, whether real or personal. *Cf. Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998); *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir. 2001).

Debtors do not, in the main, separately dispute the § 523(a)(6) analysis. They do reference *Ward v. West (In re West)*, 446 B.R. 813 (Bankr. N.D. Ohio 2010), but they do not distinctly argue how or why the case is relevant to their appeal. In any event, *In re West* concerns ostensibly similar

factual and legal circumstances: there, a landlord discovered damage to a property after the debtor moved out, obtained a $3,000 judgment in small claims court against the debtor, and then sought a determination that the judgment was nondischargeable under § 523(a)(6). *Id.* at 814–15. The similarity ends there. The bankruptcy court concluded that the judgment was dischargeable because a significant portion of the damage was caused by mere neglect, which did not rise to the level of a wilful injury. *Id.* at 816–17. There was, however, damage that the court could not "ascribe[] to just neglect." *Id.* at 817. The bankruptcy court then discussed that damage and specifically found the debtor's explanations for the damage credible. *Id.* at 817–19 (finding that damage to the toilet and wall was accidental and that removal of trim was done to improve the property).

*In re West,* thus, does not support Debtors' appeal. Crucially, it does not stand for the proposition that a debtor's liability for damage to a rental property will always be dischargeable. Instead, the conclusion in *In re West* resulted from the bankruptcy court's finding of facts.[6] Here, the bankruptcy court found that Debtors willfully and maliciously damaged Ms. Kirakosian's property. That finding was not clearly erroneous.

---

[6] After briefing was complete, Debtors submitted, as supplemental authorities, two additional decisions. *See* BAP Dkt. No. 32. As with *In re West*, each of the decisions turns on their individual facts and are dissimilar to the present case.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's judgment.