**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PLANNED PARENTHOOD OF GREATER
WASHINGTON AND NORTH IDAHO;
PLANNED PARENTHOOD OF THE GREAT
NORTHWEST AND THE HAWAIIAN
ISLANDS; PLANNED PARENTHOOD OF
THE HEARTLAND,
           *Plaintiffs-Appellants*,

v.

U.S. DEPARTMENT OF HEALTH &
HUMAN SERVICES; ALEX M. AZAR II,
in his official capacity as Secretary of
the U.S. Department of Health and
Human Services; VALERIE HUBER, in
her official capacity as Senior Policy
Advisor for the Office of the Assistant
Secretary for Health at the
Department of Health and Human
Services,
           *Defendants-Appellees*.

No. 18-35920

D.C. No.
2:18-cv-00207-
TOR

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted November 7, 2019
Seattle, Washington

Filed January 10, 2020

Before:  Ronald M. Gould and Jacqueline H. Nguyen,
Circuit Judges, and Gregory A. Presnell,* District Judge.

Opinion by Judge Gould;
Concurrence by Judge Nguyen

---

**SUMMARY**\*\*

**Teen Pregnancy Prevention Program**

The panel reversed the district court's dismissal of an action brought by three regional Planned Parenthood organizations against the Department of Health and Human Services alleging that the Department's 2018 Funding Opportunity Announcements for funding programs to combat teen pregnancy were contrary to the law as required in their appropriation, the Teen Pregnancy Prevention Program, which is the relevant part of the 2018 Consolidated Appropriations Act.

Under the Teen Pregnancy Prevention Program, the Department of Health and Human Services funds

---

\* The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

\*\* This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

pregnancy-prevention programs, periodically issuing Funding Opportunity Announcements that describe the criteria for grant selection. The Program creates two funding tiers. Tier 1's explicit purpose is to replicate programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy. Tier 2's purpose is to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy. Planned Parenthood alleged that the 2018 Funding Opportunity Announcements favored or required abstinence-only programs and required replication of unproven program tools which were contrary to the Teen Pregnancy Prevention Program. Planned Parenthood alleged that it could not effectively compete under the new grant-making criteria. The district court held that Planned Parenthood did not have standing to challenge the 2018 Funding Opportunity Announcements because Planned Parenthood did not adequately plead injury-in-fact or redressability.

The panel first held that Planned Parenthood had standing under the competitor standing doctrine, which holds that the inability to compete on an equal footing in a bidding process is sufficient to establish injury-in-fact. The panel next held that even though the Department of Health and Human Services had already spent the 2018 funds elsewhere, plaintiff's challenge to the 2018 Funding Opportunity Announcements was not moot because it satisfied the capable of repetition, yet evading review exception to mootness. The panel noted that Planned Parenthood could reasonably expect to be subject to the same injury again and the injury was inherently shorter than the normal life of litigation.

The panel exercised its equitable discretion to reach two purely legal questions in the first instance. The panel held

that the 2018 Tier 1 Funding Opportunity Announcement was contrary to the Teen Pregnancy Prevention Program and hence contrary to law. The panel noted that the Teen Pregnancy Prevention Program requires that Tier 1 grantees replicate programs proven effective through rigorous evaluation. The panel then noted that the 2018 Funding Opportunity Announcement required grantees to implement elements of either the Center for Relationship Education's Systematic Method for Assessing Risk-Avoidance Tool (SMARTool) or the Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs (TAC). The panel concluded that neither SmartTool nor TAC was a program and neither had ever been implemented, let alone proven effective. The panel therefore concluded that the Teen Pregnancy Prevention Program and the 2018 Tier 1 Funding Opportunity Announcement were irreconcilable.

The panel held that the 2018 Tier 2 Funding Opportunity Announcement, which also requires programs to implement the TAC and the SMARTool, was not contrary to law on its face. The panel stated that while it was debatable whether the SMARTool or TAC will facilitate "research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy," the Funding Opportunity Announcement requirement was not contrary to the Teen Pregnancy Prevention Program on its face. As to whether the 2018 Tier 2 Funding Opportunity Announcement was arbitrary and capricious in violation of the Administrative Procedure Act, the panel held that this issue should be decided by the district court in the first instance. The panel remanded the balance of the case for further proceedings.

Concurring in part, Judge Nguyen agreed with the majority that Planned Parenthood had standing and that the

case was not moot, but she would remand for the district court to address the merits of the challenge to the 2018 Funding Opportunity Announcements in the first instance.

**COUNSEL**

Andrew Tutt (argued), Drew A. Harker and Alexandra L. Barbee-Garrett, Arnold & Porter Kaye Scholer LLP, Washington, D.C.; Carrie Y. Flaxman and Richard Muniz, Planned Parenthood Federation of America, Washington, D.C.; for Plaintiffs-Appellants.

Jaynie R. Lilley (argued) and Mark B. Stern, Attorneys, Appellate Staff; Joseph H. Hunt, Assistant Attorney General; Joseph H. Harrington, United States Attorney; Civil Division, United States Department of Justice, Washington D.C.; for Defendants-Appellees.

Christopher Babbitt, Lynn Eisenberg, Webb Lyons, Jamie Yood, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for Amici Curiae Mayor and City Council of Baltimore and King County, Washington.

Boris Bershteyn, Tansy Woan, and Collin A. Rose, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for Amici Curiae Members of Congress.

Michael J. Fischer, Chief Deputy Attorney General; Amber Sizemore, Deputy Attorney General; Josh Shapiro, Attorney General of Pennsylvania; Office of Attorney General, Philadelphia, Pennsylvania; for Amici Curiae the Commonwealths of Pennsylvania, Massachusetts, and Virginia, and the States of California, Connecticut, Delaware, Hawai'i, Illinois, Iowa, Maryland, Michigan,

Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Rhode Island, Vermont, and Washington, and the District of Columbia.

Kathleen Hartnett and Brent K. Nakamura, Boies Schiller Flexner LLP, Oakland, California; Melissa Shube, Boies Schiller Flexner LLP, Washington, D.C.; for Amici Curiae Dr. Ron Haskins and Andrea Kane, MPA.

## OPINION

GOULD, Circuit Judge:

Planned Parenthood of Greater Washington and North Idaho, Planned Parenthood of the Great Northwest and the Hawaiian Islands, and Planned Parenthood of the Heartland (collectively, Planned Parenthood) sued the Department of Health and Human Services (HHS), alleging that HHS's 2018 Funding Opportunity Announcements (FOAs) for funding programs to combat teen pregnancy were contrary to the law as required in their appropriation, the Teen Pregnancy Prevention Program (TPPP), which is the relevant part of the 2018 Consolidated Appropriations Act. The district court dismissed the case for lack of standing, holding that Planned Parenthood had not pleaded and could not plead an injury-in-fact or redressability.

We reverse and remand. We first hold that Planned Parenthood had standing under the competitor standing doctrine and that the case is not moot because it satisfies the capable of repetition, yet evading review exception to mootness. We then exercise our equitable discretion to reach two issues in the first instance, holding that the 2018 Tier 1 FOA was contrary to law and that the 2018 Tier 2 FOA was

not.  We remand the balance of the case to the district court for further proceedings not inconsistent with this opinion.

# I

## A

In 2010, Congress created the TPPP.  Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2010).  Under the TPPP, HHS funds pregnancy-prevention programs, periodically issuing FOAs that describe the criteria for grant selection.  Applicants, including public and private entities, submit proposals, and HHS decides which applications to fund.  The 2018 TPPP appropriation is at issue here.  Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733 (2018).

The statutory language is short, simple, and has remained consistent since the program's inception:

> That of the funds made available under this heading, $101,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants, of which not more than 10 percent of the available funds shall be for training and technical assistance, evaluation, outreach, and additional program support activities, and of the remaining amount 75 percent shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk

factors underlying teenage pregnancy, or other associated risk factors, and 25 percent shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy . . . .

*Id.*; *see also* 123 Stat. at 3253 (using the same language).

The TPPP creates two funding tiers. Tier 1's explicit purpose is to "replicat[e] programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy." 132 Stat. at 733. Tier 2's purpose is "to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy." *Id.* Tier 2 lets grantees test new programs, and programs that prove effective then become eligible for Tier 1.

In 2015, HHS issued the 2015 FOAs and awarded each Plaintiff-Appellant at least one grant. In 2018, HHS issued new FOAs. Dep't of Health & Human Servs., Announcement of Availability of Funds for Phase I Replicating Programs (Tier 1) Effective in the Promotion of Healthy Adolescence and the Reduction of Teenage Pregnancy and Associated Risk Behaviors (2018) (hereinafter 2018 Tier 1 FOA); Dep't of Health & Human Servs., Announcement of the Availability of Funds for Phase I New and Innovative Strategies (Tier 2) to Prevent Teenage Pregnancy and Promote Healthy Adolescence (2018) (hereinafter 2018 Tier 2 FOA).

The critical difference between the 2015 FOAs and the 2018 FOAs is the requirement, under the 2018 FOAs, that grantees incorporate all of the elements of either the Center for Relationship Education's Systematic Method for

Assessing Risk-Avoidance Tool (SMARTool) or the Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs (TAC). 2018 Tier 1 FOA at 12, 35; 2018 Tier 2 FOA at 11. The SMARTool is a "research-based tool designed to help organizations assess, select, and implement effective programs and curricula that support sexual risk avoidance." Ctr. for Relationship Educ., SMARTool 6 (2010) (hereinafter SMARTool). The TAC "is an organized set of questions designed to help practitioners assess whether curriculum-based programs have incorporated the common characteristics of effective programs." Douglas Kirby, Lori A. Rolleri & Mary Martha Wilson, Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs 1 (2007) (hereinafter TAC).

The 2018 FOAs required that HHS evaluate grant applications based on how effectively the applicants implemented the SMARTool or the TAC. 2018 Tier 1 FOA at 12, 35, 59; 2018 Tier 2 FOA at 11–12. The 2018 Tier 1 FOA allotted twenty-five points, of a total of one hundred, for applicants' implementation of either tool. 2018 Tier 1 FOA at 59. The 2018 Tier 2 FOA likewise allotted thirty points. 2018 Tier 2 FOA at 12–13, 53–54.

## B

After studying the 2018 FOAs, Planned Parenthood decided not to bid for a grant. Instead, Planned Parenthood sued HHS. Planned Parenthood alleged that both FOAs favored or required abstinence-only programs, contrary to the TPPP. Planned Parenthood also alleged that both FOAs were contrary to the TPPP because the FOAs required replication of the SMARTool or the TAC, which were not proven programs. Under the new grant-making criteria,

Planned Parenthood alleged, Planned Parenthood could not effectively compete.

The district court held that Planned Parenthood did not have standing to challenge the 2018 FOAs because Planned Parenthood did not adequately plead injury-in-fact or redressability. *Planned Parenthood of Greater Wash. and N. Idaho v. HHS*, 337 F. Supp. 3d 976, 986, 988 (E.D. Wash. 2018).

Two other groups of similarly situated plaintiffs also sued HHS, and the three cases were decided within a day of each other. *See id.*; *Multnomah Cty. v. Azar*, 340 F. Supp. 3d 1046 (D. Or. 2018); *Planned Parenthood of N.Y.C., Inc. v. HHS*, 337 F. Supp. 3d 308 (S.D.N.Y. 2018). In *Multnomah County v. Azar*, the district court held, among other holdings, that the plaintiffs had standing under the competitor standing doctrine and enjoined the 2018 Tier 1 FOA because it was contrary to the TPPP. 340 F. Supp. 3d at 1054–56, 1068–69. In *Planned Parenthood of New York City*, the district court held that the plaintiffs had competitor standing, enjoined the 2018 Tier 1 FOA because it was contrary to law and its adoption was arbitrary and capricious, and held that the 2018 Tier 2 FOA was not contrary to law and that its adoption was not arbitrary and capricious. 337 F. Supp. 3d at 320–24, 331–42.

Appeals followed, but eventually HHS dropped its appeals of the injunctions and Planned Parenthood dropped its cross-appeals. *Multnomah Cty. v. Azar*, No. 18-35912 (9th Cir. filed Oct. 29, 2018), *appeal dismissed per joint stipulation*; *Planned Parenthood of N.Y.C., Inc. v. HHS*, No. 1:18-CV-05680 (2d Cir. filed June 22, 2018), *appeal dismissed per joint stipulation*. Meanwhile, HHS disbursed the money available for grants under the 2018 Tier 1 FOA to

a preexisting grantee and completed the grant process under the 2018 Tier 2 FOA.

HHS then issued the 2019 Tier 1 FOA. Dep't of Health & Human Servs., Announcement of Availability of Funds for Replication of Programs Proven Effective through Rigorous Evaluation to Reduce Teenage Pregnancy, Behavioral Risk Factors Underlying Teenage Pregnancy, or Other Associated Risk Factors (Tier 1) – Phase I (2019) (hereinafter 2019 Tier 1 FOA). Responding to the injunctions of the 2018 Tier 1 FOA, HHS addressed numerous alleged deficiencies. *Id.* at 9–10, 12. Most importantly, the 2019 Tier 1 FOA did not require grantees to replicate the SMARTool or the TAC. *Id.* at 12–13.

HHS also included language addressing how the litigation had affected HHS's plans for the grant program:

> OAH[1] continues to intend to pursue a substantially similar approach [as the 2018 Tier 1 FOA] through Tier 1 funding in the future so as to optimally replicate effective programs for teen pregnancy prevention. Nevertheless, two United States District Courts enjoined the issuance of awards under the 2018 Tier 1 FOA on the basis of that approach, and the appeal process for those cases is not yet complete. Therefore, for the purposes of this FOA, OAH is using the description of programs eligible for replication that is contained earlier in this

---

[1] The OAH, representing the Office of Adolescent Health, is a part of HHS, and has now merged with the Office of Population Affairs within HHS.

section, and the description of expectations of
recipients contained below . . . ."

*Id*.

## II

We have jurisdiction under 28 U.S.C. § 1291. We
review standing *de novo*. *Cetacean Cmty. v. Bush*, 386 F.3d
1169, 1173 (9th Cir. 2004). We may exercise our equitable
discretion to reach the merits of a case when the court below
did not. *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976);
*United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978).

## III

Article III standing requires injury-in-fact, causation,
and redressability. *Gill v. Whitford*, 138 S. Ct. 1916, 1929
(2018). An injury-in-fact must be "concrete and
particularized," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560
(1992) (citing, *inter alia*, *Allen v. Wright*, 468 U.S. 737, 751
(1984)), and must be "actual or imminent," *id.* (quoting
*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Standing
is measured from a litigation's beginning. *White v. Lee*, 227
F.3d 1214, 1243 (9th Cir. 2000) (citing *Friends of the Earth,
Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169–
71 (2000)).

Under the doctrine of competitor standing, "the inability
to compete on an equal footing in [a] bidding process" is
sufficient to establish injury-in-fact. *Ne. Fla. Chapter of
Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656, 666 (1993); *see also Parents Involved in Cmty.
Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718–19
(2007). An agency action that increases competition tilts the
playing field for parties that were already competing, and

those parties suffer an injury-in-fact. *City of Los Angeles v. Barr*, 929 F.3d 1163, 1173 (9th Cir. 2019) ("[T]his inability to compete on an even playing field constitutes a concrete and particularized injury."); *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 950 (9th Cir. 2017); *Preston v. Heckler*, 734 F.2d 1359, 1365 (9th Cir. 1984).

A plaintiff need not participate in the competition; the plaintiff need only demonstrate that it is "able and ready to bid." *Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666; *see also Gratz v. Bollinger*, 539 U.S. 244, 261–62 (2003); *Carroll v. Nakatani*, 342 F.3d 934, 942 (9th Cir. 2003). It is a plaintiff's ability and readiness to bid that ensures an injury-in-fact is concrete and particular; the requirement precludes the airing of generalized grievances. *See City of Los Angeles v. Barr*, 929 F.3d at 1173. Entering a bid makes the injury actual; deciding not to bid makes the injury imminent. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 664, 666.

Causation and redressability are generally implicit in injury-in-fact under the competitor standing doctrine. *Id.* at 666 n.5 ("It follows from our definition of 'injury in fact' that petitioner has sufficiently alleged both that the city's ordinance is the 'cause' of its injury and that a judicial decree directing the city to discontinue its program would 'redress' the injury."). The key is that the injury is the increase in competition rather than the ultimate denial of an application, the loss of sales, or the loss of a job. *See Wash. All. of Tech. Workers v. DHS*, 892 F.3d 332, 339–40 (D.C. Cir. 2018). Framing the injury as such, causation and redressability then derive from "[b]asic economic logic"—an agency's change of a competition's rules causes the injury and a court's invalidation of the change redresses the injury. *See Am. Inst. of Certified Pub. Accountants v. IRS*, 804 F.3d 1193, 1197–

98 (D.C. Cir. 2015). A court does not have the power to decide the winner of, or to establish the criteria for, a grant competition, at least in this circumstance, but a court does have the power to decide that particular criteria are impermissible. *See SEC v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 94–95 (1943); *Akins v. FEC*, 101 F.3d 731, 738 (D.C. Cir. 1996), *vacated on other grounds*, 524 U.S. 11 (1998). A court can make sure that there is a fair and lawful bidding process.

The need for an ample competitor standing doctrine to secure this power is obvious. If Planned Parenthood did not have standing, then the instant agency action would be insulated from judicial review. The effects of an adverse standing decision would echo through many corridors of the law. *Cf. Parents Involved*, 551 U.S. at 718–720; *City of Los Angeles v. Barr*, 929 F.3d at 1173.

We hold that Planned Parenthood had standing under the competitor standing doctrine because the elements of standing are satisfied.

Planned Parenthood alleged a competitive injury. HHS's FOAs under the TPPP establish grant-funding competitions, and HHS required applicants to implement the SMARTool or the TAC in the 2018 FOAs. 2018 Tier 1 FOA at 12, 35; 2018 Tier 2 FOA at 12. Planned Parenthood alleges that the requirement to use the SMARTool or the TAC was statutorily impermissible. Planned Parenthood also points to how the FOAs each allotted at least a quarter of a grant applicant's scoring rubric to the implementation of one of the two tools. 2018 Tier 1 FOA at 59; 2018 Tier 2 FOA at 12–13, 53–54. It is plausible that the 2018 FOAs impermissibly tilted the playing field, and the magnitude of the alleged tilt is irrelevant.

Planned Parenthood also alleged a redressable injury (caused by the FOAs). Redressability (and causation) are generally implicit in competitive injuries. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666 n.5; *Am. Inst. of Certified Pub. Accountants*, 804 F.3d at 1197–98. Here, the general rule applies. The 2018 FOAs allegedly caused Planned Parenthood's competitive injury, and vacatur of the FOAs would redress the injury.

Because we hold that Planned Parenthood had standing, we next address mootness.

## IV

If something happens during litigation that makes relief impossible, the case is moot. *See* U.S. Const. art. III, § 2, cl. 1; *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). Mootness is related to standing, but the exceptions to mootness suggest that it is more than "standing set in a time frame." *Friends of the Earth*, 528 U.S. at 190. In other words, sometimes a case may not be moot even if the plaintiff would not have standing to bring it today.

One such justiciability-saving exception is for challenges to injuries that are "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). The exception requires (1) the complaining party to reasonably expect to be subject to the same injury again and (2) the injury to be of a type inherently shorter than the duration of litigation. *Id.* Courts often hold that administrative regulations in short cycles satisfy the exception. *Compare FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462–63 (2007) (holding that regulation of two-year election cycle satisfied the exception), *and Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329–30 (9th

Cir. 1992) (holding that fishing regulation in less-than-one-year cycle satisfied the exception), *with Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1071, 1075 (9th Cir. 1995) (holding that fishing regulation in four-year cycle did not satisfy the exception). Agencies' cyclical contracts and grants also often satisfy the exception. *E.g.*, *Kingdomware*, 136 S. Ct. at 1976; *City of Los Angeles v. Barr*, 929 F.3d at 1172–73.

The 2018 Tier 1 FOA would be moot because it has no present legal effect—HHS spent the funds elsewhere and a court cannot offer Planned Parenthood relief stemming from legal obligations under that FOA. But Planned Parenthood's challenge to the 2018 Tier 1 FOA satisfies the capable of repetition, yet evading review exception. First, Planned Parenthood can reasonably expect to be subject to the same injury again. HHS indicated so in its 2019 Tier 1 FOA, stating that HHS "continues to intend to pursue a substantially similar approach [as the 2018 Tier 1 FOA] through Tier 1 funding in the future." 2019 Tier 1 FOA at 12–13. A declination to renounce a practice is sufficient to satisfy the exception, *City of Los Angeles v. Barr*, 929 F.3d at 1173 (holding the exception satisfied because the agency "ha[d] not agreed to stop giving bonus points for [challenged scoring] factors in the future"), so it follows that an affirmative announcement of intent to renew a practice is sufficient, *see City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982).

Second, the injury is inherently shorter than the normal life of litigation. The Supreme Court has noted that a period of two years is short enough to satisfy the exception. *E.g.*, *Kingdomware*, 136 S. Ct. at 1976. For grant cycles like that before us, the relevant length of time is the time between the announcement of the grant program and the actual award of

the grants. *City of Los Angeles v. Barr*, 929 F.3d at 1172. Here, the grant process is only a few months long. *See* 2018 Tier 1 FOA at 1–4.

For the same reasons, or because the 2018 Tier 2 FOA is ongoing—with a "Phase II" application process scheduled for Spring 2020—the 2018 Tier 2 FOA is also not moot. *Cf.* 2018 Tier 2 FOA at 4.

We hold that this case is not moot. We next discuss whether to reach the merits.

## V

In general, an appellate court does not decide issues that the trial court did not decide. *Singleton*, 428 U.S. at 120–21. The general rule, however, is flexible—an appellate court can exercise its equitable discretion to reach an issue in the first instance. *Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986) (citing *Youakim v. Miller*, 425 U.S. 231, 234 (1976)). When "proper resolution is beyond any doubt," *Singleton*, 428 U.S. at 121 (citing *Turner v. City of Memphis*, 369 U.S. 350 (1962)), when "injustice might otherwise result," *id.* (quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)), and when an issue is purely legal, *Patrin*, 575 F.2d at 712, are exceptions to the general rule. The Ninth Circuit has also considered the effect a delay would have, *Quinn*, 783 F.2d at 814, and whether "significant questions of general impact are raised," *Guam v. Okada*, 694 F.2d 565, 570 n.8 (9th Cir. 1982).

The purely legal issue exception deserves elaboration. A purely legal issue is one for which the factual record is so fully developed as to render any further development irrelevant. *See Patrin*, 575 F.2d at 712. For a fully developed record, not only must the record be complete, but

it must be clear that a litigant could not "have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue."  *Id.* Another way to state the purely legal exception is to say that the decision to remand should not prejudice the party that opposes the appellate court's reaching a novel issue.  *See Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004); *Patrin*, 575 F.2d at 712.

A district court is usually best positioned to apply the law to the record.  *See, e.g.*, *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1095 (9th Cir. 2014) ("While the record in this case is fully developed, and Davis pressed her unconscionability argument before the district court and did so again here, the resolution of the issue is not clear, and for that reason we decline to exercise our discretion to address the unconscionability question in the first instance."); *Am. President Lines, Ltd. v. Int'l Longshore Union, Alaska Longshore Div., Unit 60*, 721 F.3d 1147, 1157 (9th Cir. 2013) (reversing the district court's holding that plaintiff lacked standing but declining to decide whether defendant violated the relevant statute or caused plaintiff's alleged damages); *see also Dream Palace*, 384 F.3d at 1005 ("Even when a case falls into one of the exceptions to the rule against considering new arguments on appeal, we must still decide whether the particular circumstances of the case overcome our presumption against hearing new arguments.").  An appellate court should usually wait for the district court to decide in the first instance.

An appellate court need not wait when a question could not possibly be affected by deference to a trial court's factfinding or fact application, or a litigant's further development of the factual record.  *See, e.g.*, *Turf Paradise, Inc. v. Ariz. Downs*, 670 F.2d 813, 821 (9th Cir. 1982)

(deciding whether the provisions of a lease were a per se violation of the Sherman Act); *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981) (declining to definitively weigh in on the district court's holding that plaintiffs lacked standing but deciding to affirm the dismissal because the plaintiffs failed to state a claim). This is true for the same reason that we sometimes reach statutory interpretation arguments on appeal that were not made below. *See, e.g.*, *Pocatello Educ. Ass'n v. Heideman*, 504 F.3d 1053, 1060 & n.5 (9th Cir. 2007) (exercising discretion to consider First Amendment forum-analysis argument, not made below, in determining a state statute to be unconstitutional), *rev'd on other grounds sub nom. Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353 (2009); *Ariz. Cattle Growers' Ass'n v. U.S. Fish and Wildlife*, 273 F.3d 1229, 1241 (9th Cir. 2001) ("We maintain the discretion to review a purely legal issue, including the interpretation of a statute . . . .").

At times, a case presents with some issues amenable to first decision on appeal and with other issues not so amenable. In such circumstances, we can decide one issue and remand another. For example, in *Quinn v. Robinson* we decided to reach, in the first instance, a probable cause issue because we determined it was "clear," while we remanded a statute-of-limitations issue because it was "quite complex and involve[d] a discovery request as well." 783 F.2d at 815.

## VI

Whether the 2018 FOAs are contrary to the law as set forth in the TPPP are purely legal questions, and we decide

there is good reason for us to settle those questions now.[2] Beyond those questions, however, we decide to remand.

## A

Agencies cannot exceed the scope of their authority as circumscribed by Congress. *City of Arlington v. FCC*, 569 U.S. 290, 297–98 (2013); *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 359 (1986). If an agency action is "contrary to clear congressional intent," the judiciary is bound to reject the action. *Chevron, U.S.A., Inc v. NRDC*, 467 U.S. 837, 843 n.9 (1984); *see* 5 U.S.C. § 706(2)(A); *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 32 (1981) ("[Courts] must reject administrative constructions of a statute . . . that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement.").

To assess a statute, we start with the text and, unless otherwise defined, give the words their ordinary meaning. *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). Reading the statute here, we start and end our analysis by determining

---

[2] Judge Nguyen's concurrence agrees that Planned Parenthood had standing and that the case is not moot, but would instead remand the merits issues to afford the parties a new opportunity to address them. However, HHS did have the opportunity to address the merits issues, because Planned Parenthood did so in its opening brief and HHS chose to address standing and mootness but not the merits in its response. Also, HHS had filed briefing on the merits in the district court, which is before us in the record. Nor did HHS ask for more time or length in which to address those issues after we ordered supplemental briefing. For these reasons, and because the issues here are purely legal issues, as to our holding that the 2018 Tier 2 FOA was valid but the 2018 Tier 1 FOA was contrary to law, it is in our opinion appropriate in our discretion to reach the merits issues.

that the statute is clear.  *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

Because we can decide whether the 2018 FOAs are contrary to law without reference to any additional facts beyond those now in the record, we exercise our discretion to do so.  *See Pocatello Educ. Ass'n*, 504 F.3d at 1060; *Turf Paradise*, 670 F.2d at 821.  The statutory interpretation in this case is simple and straightforward, and we reach it because the resolution is beyond doubt.  *See Singleton*, 428 U.S. at 121.

We do not exercise this discretion lightly.  Important to our determination is the unnecessary delay that remand would cause, *Quinn*, 783 F.2d at 814, and the general, national impact of the case on many persons, *Okada*, 694 F.2d at 570 n.8.  The delay remand would cause is unnecessary in this case because the resolution is beyond doubt.

In addition, the case has broad impact on society because it involves a federal statute and concomitant agency action with national effect.  Three cases arising from these facts have already reached decision.  *Planned Parenthood of Greater Wash*, 337 F. Supp. 3d at 976; *Multnomah Cty. v. Azar*, 340 F. Supp. 3d at 1046; *Planned Parenthood of N.Y.C.*, 337 F. Supp. 3d at 308.  Only this appeal, however, went undismissed.  *Multnomah Cty. v. Azar*, No. 18-35912 (9th Cir. filed Oct. 29, 2018), *appeal dismissed per joint stipulation*; *Planned Parenthood of N.Y.C., Inc. v. HHS*, No. 1:18-CV-05680 (2nd Cir. filed June 22, 2018), *appeal dismissed per joint stipulation*.  In the meantime, HHS issued the 2019 Tier 1 FOA, addressing many issues that Planned Parenthood has challenged but also stating that HHS "intend[s] to pursue a substantially similar approach through Tier 1 funding [as the 2018 Tier 1 FOA] in the future."  2019

Tier 1 FOA at 12–13.  The parties expect that HHS will issue 2020 FOAs.  Whether the 2020 FOAs are more like their 2018 or their 2019 counterparts necessarily will be generally significant, not only for the parties before us but for similarly situated parties within the Ninth Circuit and nationwide.

### B

We hold that the 2018 Tier 1 FOA is contrary to the TPPP.  The TPPP requires that Tier 1 grantees "replicate" "programs" "proven effective through rigorous evaluation." 132 Stat. at 733.  The 2018 Tier 1 FOA requires that Tier 1 grantees implement each element of either the TAC or the SMARTool.  2018 Tier 1 FOA at 12, 35.  Neither the TAC nor the SMARTool is a program and neither has ever been implemented, let alone proven effective.  The TPPP and the 2018 Tier 1 FOA are thus irreconcilable.  The 2018 Tier 1 FOA is contrary to law.

This is plain as day based on dictionary definitions.  *See United States v. Ezeta*, 752 F.3d 1182, 1185 (9th Cir. 2014). To replicate is to "duplicate," to "copy exactly."  *Replicate*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/replicate (last visited Nov. 14, 2019).  A replication requires an original implementation. The TAC and the SMARTool cannot be replicated because they have never been implemented.

The TAC and the SMARTool have never been implemented because they are tools, not programs.  A tool cannot be implemented.  A program is "a plan or system under which action may be taken toward a goal," a "curriculum," a "syllabus."  *Program*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/program (last visited Nov. 14, 2019).

Neither the SMARTool nor the TAC comes near to fitting that definition. By the SMARTool's own definition of itself, the SMARTool's purpose is "to help organizations assess, select, and implement effective programs and curricula." SMARTool at 6. Likewise, the TAC's purpose is "to help practitioners assess whether curriculum-based programs have incorporated the common characteristics of effective programs." TAC at 1. The SMARTool and the TAC are sets of elements that guide the selection of and testing of programs—they are tools and are not in themselves programs capable of replication.

Logically, then, the 2018 Tier 1 FOA would incorrectly permit grants for programs not proven effective, contrary to the TPPP. The 2018 Tier 1 FOA's direction that grant applicants "address and replicate each of the elements" of the TAC or the SMARTool, 2018 Tier 1 FOA at 12, contradicts the TPPP's direction that Tier 1 grants go only to applicants whose programs are "proven effective," 132 Stat. at 733. To prove something effective requires a previous implementation that one can test against a standard. *See Prove*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/proven (last visited Nov. 14, 2019). No entity has created a program that implements each element of either tool, so by definition no such program has been proven effective.

HHS's argument that the elements comprising the TAC and the SMARTool are derived from proven programs is unavailing. Even if the programs from which the tools were developed were proven effective, the TPPP appropriation does not permit HHS to fund grantees under Tier 1 that create new programs by reference to subsets of elements of proven programs. The TPPP's Tier 1 allows only the

replication of effective programs, not of elements of programs.

## C

The 2018 Tier 2 FOA, however, is not contrary to the TPPP.  Tier 2's purpose, by contrast to that of Tier 1, is to "develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy." 132 Stat. at 733.  The key difference between Tier 1 and Tier 2 is that Tier 1 funds "proven effective" programs whereas Tier 2 encourages and tolerates innovations and is the programs' proving ground.  *Id.*  The 2018 Tier 2 FOA also requires programs to implement the TAC and the SMARTool.  *See* 2018 Tier 2 FOA at 11–13.  While it is debatable whether these tools will facilitate "research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy," this requirement is not contrary to the TPPP on its face.  132 Stat. at 733.

We hold that the 2018 Tier 1 FOA is contrary to law as set forth in the TPPP on its face.  5 U.S.C. § 706(2)(A).  But we hold that the 2018 Tier 2 FOA is not contrary to the TPPP on its face.

## D

We turn next to the argument that the 2018 Tier 2 FOA was arbitrary and capricious agency action.  Because consideration of this question could benefit from development of the record and will benefit from decision by the district court in the first instance, we decline to exercise our discretion to decide that question and instead remand it to the district court.

Under the Administrative Procedure Act, a court must invalidate arbitrary and capricious agency action. *Id.* When a court undertakes this type of analysis, the court needs to ensure a "rational connection between the facts [the agency] found and the choice [the agency] made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.* (*State Farm*), 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). An agency, of course, is generally empowered to change its policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). But the decision requires rationality and must be supported by the record.[3]

We need not say more because we decline to exercise our discretion to decide whether the 2018 Tier 2 FOA was

---

[3] The United States Government has created many federal agencies to help implement important areas of the law. But whatever the agency, it will be a creature of statute and bound by both its authorizing statute and by its own regulations unless they are changed by procedures that are lawful. A federal agency does not have unlimited power to exercise its authority over persons whenever it pleases and without regard to what its enabling statute authorized it to do. Further, federal agencies are subject to general laws, and among these are the Administrative Procedure Act, which would invalidate programs that are contrary to law or those that are arbitrary and capricious. Such principles apply to all federal agencies. For example, the EPA was formed to protect the environment, but its actions must be consistent with the National Environmental Policy Act, the Clean Air Act, the Clean Water Act, and the Federal Insecticide, Fungicide, and Rodenticide Act, among others. The Occupational Safety and Health Administration must follow the Occupational Safety and Health Act. The National Labor Relations Board must follow a group of labor laws, including the National Labor Relations Act. The Food and Drug Administration must follow the Federal Food, Drug, and Cosmetic Act and the Public Health Service Act. Similarly here the Health and Human Services Administration must follow its enabling legislation and particular legislation such as the Teen Pregnancy Prevention Program.

arbitrary and capricious agency action. The analysis in this case will require intensive factfinding and fact application. The district court must determine which facts the agency had before it, which factors the agency assessed, which conclusions the agency made, and whether the agency provided a reasoned explanation for the change, among many considerations. *See Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125–26 (2016); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468–69 (2001); *State Farm*, 463 U.S. at 43. We hold that in the circumstances of this case, the application of the arbitrary-and-capricious standard should be determined by the district court in the first instance.

## VII

We hold: (1) that Planned Parenthood had standing under the competitor standing doctrine; (2) that the challenge to the 2018 FOAs has not been rendered moot by the passage of time and promulgation of a new FOA for 2019, because of the capable of repetition, yet evading review standard; (3) that the 2018 Tier 1 FOA is contrary to the TPPP and hence contrary to law; (4) that the 2018 Tier 2 FOA is not contrary to law on its face; (5) that whether the 2018 Tier 2 FOA is arbitrary and capricious in violation of the APA should be decided by the district court in the first instance. We remand the balance of the case to the district court for further proceedings not inconsistent with this opinion.

**REVERSED and REMANDED.**

NGUYEN, Circuit Judge, concurring in part:

I agree with the majority that Planned Parenthood has standing and that the case is not moot, but I would remand for the district court to address the merits of the challenge to the 2018 Funding Opportunity Announcements ("FOAs") in the first instance.

As the majority acknowledges, we generally "do[] not consider an issue not passed upon below." *Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). "Even when a case falls into one of the exceptions to the rule against considering new arguments on appeal, we must still decide whether the particular circumstances of the case overcome our presumption against hearing new arguments." *Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004).

Here, the alleged risks of the delay associated with a remand for the district court to evaluate the merits first are speculative.[1] I agree with the majority that this case is one of national import, but that dictates strongly in favor of adhering to our general practice. Reasonably, HHS did not even discuss the merits in its initial brief. *Singleton*, 428 U.S. at 120 (finding a party "justified in not presenting . . . arguments [regarding new issues] to the Court of Appeals, and in assuming, rather, that he would at least be allowed to answer the complaint, should the Court of Appeals reinstate

---

[1] Although the Department of Health and Human Services ("HHS") is expected to issue new multi-year FOAs in 2020, we do not know whether the FOAs will resemble the contested 2018 FOAs, the modified 2019 Tier 1 FOA, or something entirely different. Other litigations could spur further changes by HHS. And HHS may ultimately decide not to issue 2020 FOAs.

it"). HHS discussed the merits only in a short supplemental brief, which we ordered to be limited to ten pages.[2] Given the significance of this litigation, the parties should have a full opportunity to address the merits of the 2018 FOAs before the district court. I am not convinced that allowing them to do so would result in any injustice to either party. I therefore cannot join Parts VI and VII of the majority opinion.

---

[2] On October 7, 2019—exactly one month before oral argument—we ordered both parties to file a supplemental letter brief addressing the merits issues. We limited each party's brief to ten double-spaced pages (or 2,800 words).