**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

JULIAN MORA-ALCARAZ,
*Defendant-Appellee.*

No. 19-10323

D.C. No.
3:17-cr-00022-
LRH-CBC-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted November 16, 2020
San Francisco, California

Filed January 21, 2021

Before: Mary M. Schroeder and Marsha S. Berzon, Circuit
Judges, and Salvador Mendoza, Jr.,[*] District Judge.

Opinion by Judge Schroeder

---

[*] The Honorable Salvador Mendoza, Jr., United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Criminal Law

On an interlocutory appeal by the United States, the panel affirmed in part and reversed in part the district court's order suppressing evidence resulting from a confrontation between police officers and the defendant while he was with his seven-year-old son at a shopping mall, and remanded.

The panel rejected the defendant's contention that the appeal, which was filed more than thirty days after the suppression order but within thirty days of the district court's denial of the government's motion for reconsideration, is untimely. The panel held that *United States v. Healy*, 376 U.S. 75 (1964), which forecloses the defendant's argument, has not been supplanted by Fed. R. App. P. 4, and is not inconsistent with the Supreme Court's more recent decision in *Bowles v. Russell*, 551 U.S. 205 (2007).

The panel affirmed the district court's suppression of incriminating statements the defendant made after the armed police officers met him in two marked vehicles, separated him from his son, and interrogated him without reading him *Miranda* warnings. The panel held that the totality of the circumstances, including the factors identified in *United States v. Kim*, 292 F.3d 969 (9th Cir. 2002), supports the district court's conclusion that a reasonable person in the defendant's position would not have felt free to end the questioning and leave the mall; and that the district court

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

therefore properly ordered the statements suppressed because they were the product of a custodial interrogation in which the defendant was not advised of his rights pursuant to *Miranda*.

The panel held that the district court erred in ruling that because the *Miranda* violation resulted in the seizure of a firearm from the defendant's truck, that violation also required the gun's suppression as evidence. Because a *Miranda* violation does not alone warrant suppression of the physical fruits of the defendant's inculpatory statements, and both parties agree that the appropriate inquiry is whether, looking at the totality of the circumstances, the defendant's consent to the search of the trunk was voluntary, the panel remanded for the district court to resolve the voluntariness issue in the first instance.

## COUNSEL

Nancy M. Olson (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Nicholas A. Trutanich, United States Attorney, United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellant.

Aarin E. Kevorkian (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Defendant-Appellee.

**OPINION**

SCHROEDER, Circuit Judge:

This is what has become a relatively rare interlocutory appeal by the United States from a district court order suppressing evidence in a criminal prosecution. The defendant-appellee is Julian Mora-Alcaraz, who has been indicted for being an alien in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). The evidence suppressed resulted from a confrontation between police officers and Mora-Alcaraz while he was with his seven-year-old son at a shopping mall in Reno, Nevada.

The evidence suppressed consisted of incriminatory statements by Mora-Alcaraz and a gun the police seized from his vehicle. Mora-Alcaraz made the statements after several, armed police officers met him in two marked vehicles. The police separated Mora-Alcaraz's son from him before beginning the interrogation. Throughout the encounter, the officers never read him the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966) ("*Miranda* warnings"). After Mora-Alcaraz admitted being an alien and possessing a firearm, he consented to a search of his vehicle that resulted in seizure of the gun. The district court suppressed both the statements and the gun.

We affirm the suppression of the statements, because we agree with the district court that they were the product of a custodial interrogation conducted without the required *Miranda* warnings and therefore inadmissable. However, the district court suppressed the firearm on the same ground without further analysis. Because a *Miranda* violation does not alone warrant suppression of the physical fruits of the

defendant's inculpatory statements, *see United States v. Patane*, 542 U.S. 630, 635 (2004) (plurality opinion), and both parties agree that the appropriate inquiry is whether, looking at the totality of the circumstances, Mora-Alcaraz's consent to the search of the trunk was voluntary, we remand for the district court to resolve the voluntariness issue in the first instance.

First, we must consider the threshold issue of the timeliness of the appeal. Mora-Alcaraz contends it is untimely even though the appeal was filed within thirty days of the district court's denial of the government's motion for reconsideration. Mora-Alcaraz contends 18 U.S.C. § 3731 requires the appeal to be filed within thirty days of the order granting the motion to suppress. We follow the Supreme Court's opinion in *United States v. Healy*, 376 U.S. 75 (1964) which squarely forecloses Mora-Alcaraz's argument. *Healy* has not been supplanted by the adoption of Rule 4 of the Federal Rules of Appellate Procedure. Moreover, we agree with the other Circuits that *Healy*'s holding is compatible with *Bowles v. Russell*, 551 U.S. 205 (2007). *See United States v. Henderson*, 536 F.3d 776, 779 n.2 (7th Cir. 2008) (cert denied); *United States v. Rainey*, 757 F.3d 234, 239–240 (5th Cir. 2014).

## I. Background

The events giving rise to this appeal began with a call to the Reno police department in November 2016 reporting a domestic dispute at the home of Mora-Alcaraz's estranged wife Geneva and their seven-year-old son. When contacted, Geneva reported that Mora-Alcaraz had come to her home to accost her new boyfriend. She stated that, during the argument, and in front of the boy, Mora-Alcaraz brandished

a semi-automatic gun.  According to Geneva, the argument eventually settled down, and Mora-Alcaraz spent the night sleeping on the couch in her home.

The next morning, Mora-Alcaraz set off on a trip with the boy to a mall.  Although the child was not the defendant's biological son, the district court found the two had a close father-son relationship, something the government does not dispute.  Officer Jackins, who had received the report of the domestic disturbance, called Mora-Alcaraz at the mall, asking to speak with him about the events of the previous evening and early morning and do a welfare check on the child.  Mora-Alcaraz agreed to meet at the mall, outside of Dick's Sporting Goods store.

Officer Jackins arrived at the mall with three other armed, uniformed officers in two police cars.  After Mora-Alcaraz and his son met the officers outside the store, Officer Jackins asked to speak to Mora-Alcaraz away from the boy.  Mora-Alcaraz acquiesced.  Two officers then escorted the boy to the entrance of the store; they eventually took him inside because the boy was cold.

In the meantime, Officer Jackins took what he described as a "kill them with kindness" approach to the interrogation.  Mora-Alcaraz cooperated and eventually admitted to being in the United States illegally and having a gun in his truck.  He agreed to let Officer Jackins see the gun.  The officer drove Mora-Alcaraz in the patrol car across the parking lot and parked in the travel lane, amber lights flashing.  Officer Jackins then entered the truck, seized the firearm, and arrested Mora-Alcaraz for being an alien in possession of a firearm.

After his indictment for violating 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2), Mora-Alcaraz moved to suppress both his statements and the firearm. Following a two-day evidentiary hearing, the district court ruled from the bench that Mora-Alcaraz had been subjected to a custodial interrogation, because he was not free to leave, and that he should have been given *Miranda* warnings. In response to the government's argument that Mora-Alcaraz could leave because he was not physically restrained, the district court focused on his having been separated from the boy, which the court concluded made physical restraint unnecessary. The court also noted the threatening nature of the "police dominated atmosphere"—there were several armed officers in marked cars, and lights flashing or otherwise displayed. The court ordered the statements suppressed. It also ordered the gun suppressed as well, on the ground that the lack of *Miranda* warnings may have led to Mora-Alcaraz's consent to the search.

The government moved for reconsideration, stressing that Mora-Alcaraz had consented to being separated from his son, and raising factual disputes. The district court denied the motion because its ruling on suppression had taken the government's position with respect to the separation into account, and the factual issues were not material. This appeal of the suppression order followed.

The government here contends that the statements should not have been suppressed because Mora-Alcaraz was not taken into custody, and that the district court erred in suppressing the gun as the fruit of a *Miranda* violation. Mora-Alcaraz, apart from defending the district court's rulings, contends that we should dismiss the government's appeal as untimely. We consider that issue first.

## II.  Discussion

### A.  THE APPEAL IS TIMELY

Mora-Alcaraz asks us to dismiss the appeal as untimely, pointing to the statutory language of 18 U.S.C. § 3731. Section 3731 authorizes an interlocutory  appeal "from a decision or order of a district court suppressing or excluding evidence . . . in a criminal proceeding" and states that an appeal must be filed "within thirty days after the decision, judgment or order. . . ."  In this case the government, within thirty days of the order granting the motion to suppress, asked the district court to reconsider its order, and within thirty days of the denial of that motion for reconsideration, filed this appeal.   Mora-Alcaraz argues that the motion for reconsideration does not toll the running of the thirty-day statutory time for appeal.

The Supreme Court has held, however, that an order appealable by the United States in a criminal case is not final until a pending rehearing petition is resolved.  *See Healy*, 376 U.S. at 78.  Mora-Alcaraz contends *Healy* is no longer good law because it has been superseded by the subsections of Rule 4(b) of the Federal Rules of Appellate Procedure that list motions that toll the time for appeal from a final judgment.  Government motions for reconsideration are not listed.  *See* Rule 4(b)(3)(A); Rule 4(b)(1)(B).

There is no conflict.  The subsection of Rule 4 upon which Mora-Alcaraz relies relates to appeals by criminal defendants, not appeals by the government.  *See* Rule 4(b)(3)(A).  There can be no serious question about the continuing validity of *Healy*, since the Supreme Court and this court have relied on *Healy* following promulgation of the

Appellate Rules. *See, e.g.*, *United States v. Ibarra*, 502 U.S. 1, 4–8 (1991); *United States v. Belgarde*, 300 F.3d 1177, 1180 (9th Cir. 2002).

Mora-Alcaraz also argues that if Rule 4 did not displace *Healy*, then the Supreme Court's more recent decision in *Bowles*, 551 U.S. 205 (2007), did. There is no inconsistency between the two decisions of the Court. *Healy* concerns when the statutory time for an appeal begins to run, and *Bowles* addresses whether a court can create exceptions to the statutory time limit once it has begun running. The only other circuits to consider Mora-Alcaraz's argument have agreed with this understanding. *See United States v. Henderson*, 536 F.3d 776, 779 n.2 (7th Cir. 2008) (cert denied) ("Bowles considered whether a court may make an exception to a statutorily imposed time limit for filing an appeal; it did not involve the separate question of when such a time limit begins to run."); *see also United States v. Rainey*, 757 F.3d 234, 239 (5th Cir. 2014).

The appeal is timely because the notice was filed within thirty days after the suppression order became final.

## B. THE DISTRICT COURT CORRECTLY ORDERED MORA-ALCARAZ'S STATEMENTS SUPPRESSED

The district court ordered Mora-Alcaraz's incriminating statements concerning his citizenship status and his ownership of the gun suppressed because they were the product of a custodial interrogation that required *Miranda* warnings. The parties agree that the key issue is whether the district court erred in holding that persons in Mora-Alcaraz's position would have felt, under a totality of the circumstances, that they were "not at liberty to terminate the

interrogation and leave." *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008).

The case differs from most *Miranda* cases, however, in that the police interrogation took place in a public shopping mall. Most such disputed interrogations seem to take place in a police station, *see, e.g.*, *Miranda*, 384 U.S. 436; *Mathis v. United States*, 391 U.S. 1 (1968), or in the defendant's home, *see e.g.*, *Orozco v. Texas*, 394 U.S. 324 (1969); *Craighead*, 539 F.3d 1073. We agree with the government that, in determining whether Mora-Alcaraz was free to leave, the factors we identified in *United States v. Kim*, 292 F.3d 969 (9th Cir. 2002), are certainly relevant, although not exclusive. *See id.* at 974. Mora-Alcaraz agrees that *Kim* is instructive. These factors are: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *Id.* at 974 (citations omitted).

In *Kim*, the defendant went with her husband to her shop, from which she was suspected of supplying ingredients for the production of methamphetamine. *Id.* at 971. The reason the two came to the store was that they had not been able to reach their son, who had been left in charge. *Id.* at 971–972. Upon her arrival, she encountered several officers. *Id.* The police prevented the husband from entering the shop, surrounded the defendant inside the shop, and prevented her from speaking to her son. *Id.*

In deciding whether the interrogation was custodial, our court assessed what have since been referred to as the "*Kim* factors." First, we looked to "the language used to summon

the defendant," which, in *Kim*, and in the case before us, is not telling as to custody. *Id.* at 974. Second, we looked to "the extent to which the defendant [was] confronted with evidence of guilt." *Id.* The confrontational posture taken by the officer was greater in *Kim* than in this case. *Id.* Here, Officer Jackins did confront Mora-Alcaraz with guilt, but neither party contends that Officer Jackins was aggressive, since he deliberately refrained from such tactics, describing his approach instead as intended to "kill them with kindness."

Third, in *Kim*, as well as in *Craighead*, 539 F.3d at 1083, a further relevant factor was the assessment of "the physical surroundings of the interrogation," and in both cases we concluded a person is in custody when in a "police-dominated atmosphere." *Kim*, 292 F.3d at 974, 977. Here, the government argues that such an atmosphere could not have existed because the mall setting was a familiar, public one. The district court correctly concluded, however, that despite the setting, the police created what was undoubtedly a police-dominated atmosphere. Mora-Alcaraz expected to meet a single police officer and was confronted instead by four armed officers and two police cars; at one point, one of the vehicles was blocking the travel lane and flashing amber lights, creating a major distraction from the otherwise familiar surroundings. The defendant in *Kim* was in more familiar surroundings—her own shop. Still, this court observed that "isolating the defendant from the outside world . . . largely neutralizes the familiarity of the location as a factor affirmatively undermining a finding of coercion." *Id.* at 977. The fourth factor is the duration of the detention. Mora-Alcaraz was detained for 36 minutes, which may weigh against custody.

Finally, and most important in this case, as in *Kim*, we look to "the degree of pressure applied to detain the individual." *Id.* at 974. In *Kim*, we concluded that the interrogation was custodial for the principal reason that the police had separated the defendant from her husband and grown son. *Id.* at 977–78. Here, the police took physical custody of Mora-Alcaraz's seven-year-old son and eventually led him inside a large store and out of Mora-Alcaraz's sight. Despite the lack of physical restraints, Mora-Alcaraz was subjected to severe pressure as a result of the police separating him from his son. Although the government argues the situation was relatively benign, because there was no threat of harm to the child, the police were well aware that a father would not walk away from a public place and leave his young son with strangers. No physical restraint of Mora-Alcaraz was necessary so long as the police kept him separated from his son. He could not leave.

In sum, the totality of circumstances, including the *Kim* factors, supports the district court's conclusion that a reasonable person in Mora-Alcaraz's position would not have felt free to end the questioning and leave the mall. The district court properly ordered the statements suppressed because they were the product of a custodial interrogation in which Mora-Alcaraz was not advised of his rights pursuant to *Miranda*. The order suppressing Mora-Alcaraz's inculpatory statements to Officer Jackins must be affirmed.

## C.  THE LACK OF MIRANDA WARNINGS DID NOT ALSO JUSTIFY SUPPRESSION OF THE FIREARM

Mora-Alcaraz's admission that he possessed a firearm led directly to its seizure from his truck out of direct eyesight of Dick's Sporting Goods. The district court ruled that because

the *Miranda* violation resulted in the seizure of the gun, that violation also required the gun's suppression as evidence. This was error.

The Supreme Court determined in *United States v. Patane*, 542 U.S. 630 (2004) that the physical evidence obtained as a result of a custodial interrogation without *Miranda* warnings is nevertheless admissible. Both the plurality and concurrence agreed with this conclusion. *Id.* at 634 (plurality opinion); *id*. at 644–645 (Kennedy, J. and O'Connor, J., concurring).

In this case, the parties agree that the appropriate inquiry is whether, looking at the totality of the circumstances, Mora-Alcaraz's consent to the search of the trunk was voluntary. Consistent with the *Patane* decision, this court has long-held that the failure to give *Miranda* warnings is not "dispositive of whether an individual voluntarily consented to a search." *United States v. Ritter*, 752 F.2d 435, 439 (9th Cir. 1985) (citations omitted).

The district court remarked that consent was "very voluntary" but then determined that the gun should be suppressed simply because Mora-Alcaraz had not received *Miranda* warnings. The proper analysis, however, looks to all the circumstances, including: "(1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether *Miranda* warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained." *United States v. Johnson*, 875 F.3d 1265, 1276–77 (9th Cir. 2017); *see also United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004).

The government urges us to conclude consent was voluntary, and Mora-Alcaraz urges us to hold it was not. As we have seen, the district court did not separately decide the issue of voluntariness of the consent to search the vehicle because it suppressed the gun only on the basis of the *Miranda* violation. We decline to resolve the voluntariness issue in the first instance because the question involves applying the law to the facts of this particular case, which the district court is in a better position to do. *See Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1111, 1115 (9th Cir. 2020) (citations omitted) (remanding is often the appropriate action when the issue is not "purely legal" because "[a] district court is usually best positioned to apply the law to the record").

We therefore vacate the district court's order suppressing the firearm and remand for the district court to determine whether Mora-Alcaraz's consent to the search of the truck was voluntary, applying the factors enumerated in *Johnson* and *Patayan Soriano*.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**